Filed 6/24/19; Certified for Publication 7/18/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TAYLER L. WILLIAMS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FREMONT CORNERS, INC.,<br><br>    Defendant and Respondent. | H043218<br>(Santa Clara County<br>Super. Ct. No. 114CV262382) |

Tayler L. Williams sued the Fremont Corners Shopping Center for negligence and premises liability after he was assaulted in its parking lot. His appeal concerns, as a measure of foreseeability, the scope of a landowner's duty to exercise reasonable care to discover that criminal acts are being committed or are likely to be committed on the premises. The trial court granted the defendant shopping center's motion for summary judgment after finding that it had no duty to take affirmative measures—beyond those in the record—to discover criminal activity on the premises. We will affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    *Parking Lot Assault*

The Fremont Corners Shopping Center in Sunnyvale houses approximately 16 retail stores, including the Peacock Lounge. Defendant Fremont Corners, Inc. (Fremont Corners), owns and manages the shopping center. Jay Murray is the manager and vice president of Fremont Corners.

The Peacock Lounge is a bar. Williams is a drummer who performed at the bar on the evening of March 31, 2012. He was accompanied by his bandmate and two friends. After the band finished its set around 1:30 a.m. on April 1, 2012, Williams and a friend went outside to the parking lot. Returning to the bar, the group noticed a man they recognized from the bar, who was urinating on the sidewalk outside the front door by the planter. One of them commented "not cool" to the man, who responded belligerently, confronting Williams' friend, Aaron Palmer. A group of unidentified males calmed the man down, and Williams and Palmer walked inside while another friend remained in the parking lot.

Williams turned and saw through the open door that the friend who had stayed outside was on the ground being punched by the man who had been urinating. The assault was happening in the parking lot about 15 to 25 feet from the Peacock Lounge entrance. Williams and Palmer yelled for "security" to no one in particular, then ran outside. Williams yelled "I'm not fighting" and "Stop" as he approached, but was hit on the left side of his head by an unknown assailant. Williams was knocked out. When he came to, he realized that he had injured his left knee. Palmer testified later that he did not see any security patrolling the parking lot on the evening or day of the assault.

### B. *Complaint Against Fremont Corners*

Williams claimed serious injuries from the attack, including a dislocated left knee and several torn ligaments. He sued several defendants associated with the Peacock Lounge and Fremont Corners Shopping Center, alleging causes of action for negligence and premises liability. Fremont Corners is the only defendant party to this appeal.

According to the complaint, Fremont Corners leased the premises to the Peacock Lounge to operate a bar. Williams was there on the night of the attack by implied invitation, and his assailant or assailants were patrons of the bar. Williams alleged that Fremont Corners owed a duty of care to keep the shopping center premises reasonably

2

safe for the public, including to protect from the reasonably foreseeable criminal acts of third parties, given the nature of bar business and "prior similar occurrences" on the premises. He alleged that Fremont Corners breached its duty by failing, in various ways, to provide adequate security on the premises, to monitor the parking lot close to the bar, and to properly light the area, which created or permitted dangerous conditions to exist on the premises and formed a substantial factor in causing his injuries. The allegations formed the basis of both the negligence and premises liability causes of action.

### C. *Motion for Summary Judgment*

Fremont Corners moved for summary judgment. It contended that Williams could not support the allegations that the assault was reasonably foreseeable, and so could not establish a legal duty as required for the negligence and premises liability causes of action. It relied on *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224 (*Delgado*) and other premises liability cases for the principles that govern a business enterprise's scope of duty to protect others from the conduct of third parties. It asserted that the evidence showed that Fremont Corners and the Peacock Lounge were not aware of any prior similar incidents in the bar or at the shopping center, which had lighting and security cameras.

Williams responded in part by offering records of service calls from the Sunnyvale Department of Public Safety. According to the declaration of Williams' counsel, the records were obtained by deposition subpoena. They include a declaration of the custodian of records for the department stating that the record copies were prepared in the ordinary course of business at or near the time of the act or event. There are incident reports from five calls for service to Fremont Corners and the Peacock Lounge, including police reports of a simple assault on August 13, 2011, a battery with serious bodily injury on September 4, 2011, and a physical altercation with an unknown suspect on October 8, 2011, which resulted in the victim suffering a broken right jaw. Williams requested

3

judicial notice of a series of facts related to the manner of preparation and trustworthiness of public entity records like the police reports, as "not reasonably subject to dispute and . . . capable of immediate and accurate determination . . ." (Evid. Code, § 452, subd. (h)).  The subpoenaed evidence, however, was not referenced in Williams' separate statement of undisputed facts.

Williams argued in opposition to the motion for summary judgment that under the general rule of liability of landowners and possessors of property as set forth in Restatement Second of Torts, section 344, Fremont Corners had the duty to exercise reasonable care to discover unsafe conditions on the property, including the harmful acts of third parties that might injure patrons of the shopping center.  Williams pointed out that in *Delgado*, the jury was instructed concerning the duty to anticipate criminal conduct of a third person and concerning the duty of care owed by a business proprietor. (*Delgado*, *supra*, 36 Cal.4th at p. 232, fns. 8 & 9.)  Williams challenged the assertion that Fremont had insufficient knowledge of prior instances of criminal conduct, noting the undisputed evidence that its manager, Jay Murray, knew of two prior criminal incidents at the shopping center and, moreover, had a legal duty to exercise due care to discover the possibility of harm from other third-party criminal acts.  Williams asserted that Murray's semi-regular visits to the shopping center failed to fulfill this duty.  Williams also pointed to the public safety records attached to his counsel's declaration as evidence that several assaults had occurred on the premises in the seven-month period preceding his assault.

Fremont Corners objected to the proffered public safety records.  First, Fremont Corners argued that Williams' noncompliance with the procedural rules requiring the party opposing the motion for summary judgment to include in the separate statement any "material fact contended by the opposing party to be disputed" was itself a "sufficient ground, in the court's discretion, for granting the motion."  (Code Civ. Proc., § 437c, subd. (b)(3).)  It also challenged the admissibility of the records submitted as exhibits to Williams' counsel's declaration, including for lack of foundation, lack of authentication,

4

and hearsay.  It argued in reply to the opposition that Williams' evidence failed to raise a triable issue of fact regarding the question of foreseeability of the third-party conduct, and that the incidents identified in the reports were not sufficiently similar to the assault on Williams to establish foreseeability.

### D.    *Order Granting Summary Judgment*

The trial court issued a written order after hearing.[1]  Addressing the admissibility question, the court agreed with Fremont Corners that Williams' opposition had not utilized the separate statement to identify and explain how the public records attached to his counsel's declaration would raise a triable issue of fact.  But the court declined to grant the motion on that basis.  (Code Civ. Proc., § 437c, subd. (b)(3).)  It sustained Fremont Corners' authentication objection to one record that was "a five-page table of numbers and undecipherable codes" and overruled the hearsay objection to the proffered incident reports, finding that if Williams' "purpose is to show potential notice to Fremont Corners and not the truth of the double hearsay statement, then the hearsay objection to the second layer is not well taken."

The trial court then analyzed duty under the framework outlined in the California Supreme Court's decision in *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 676-679 (*Ann M.*), disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, footnote 5.  The court observed that under *Ann M.*, a duty to take action to control the wrongful acts of a third party exists " 'only where such conduct can be reasonably anticipated' " (quoting *Ann M.*, *supra*, at p. 676), which for certain affirmative actions requires a " 'high degree of foreseeability . . . .' " (quoting *id.* at p. 679).  The trial court found that the evidence proffered by Williams was insufficient under this standard, because "[e]ven assuming that there is record evidence of previous assaults occurring" at the shopping center, Williams "does not argue or offer any evidence that Fremont

_____

[1] The record on appeal does not contain a reporter's transcript of the hearing.

5

Corners had notice of these incidents." It rejected the contention that Fremont Corners' "duty to exercise reasonable care to discover that criminal acts are being or likely to be committed" (*id*. at p. 679) required it to affirmatively inquire about criminal activity, finding "no legal authority to support the imposition of such an affirmative duty."

The trial court accordingly granted the motion for summary judgment. Fremont Corners thereafter filed a notice of entry of order granting the motion for summary judgment, followed by an amended notice of entry of order.

This appeal followed.[2]

## II.    DISCUSSION

### A.    *Scope of Inquiry and Standard of Review*

Both the negligence and premises liability causes of action in this case require us to determine whether Fremont Corners owed Williams a legal duty to protect him from the assault on the premises. Whether and to what extent the defendant owed a duty to the plaintiff is a question of law for the court to resolve. (*Ann M*., *supra*, 6 Cal.4th at p. 674; *Wiener v*. *Southcoast Childcare Centers*, *Inc*. (2004) 32 Cal.4th 1138, 1146 (*Wiener*).) We determine de novo the existence and scope of that duty. (*Ann M*., *supra*, at p. 674.)

"Although duty is a legal question, the factual background against which we decide it is a function of a particular case's procedural posture." (*Castaneda v*. *Olsher* (2007) 41 Cal.4th 1205, 1214 (*Castaneda*).) On review of an order granting summary judgment, we independently examine the record to determine whether triable issues of

---

[2] The appeal was from the nonappealable order granting summary judgment and was subject to dismissal on that basis. (See Code Civ. Proc., § 904.1; *Modica v*. *Merin* (1991) 234 Cal.App.3d 1072.) In the interest of considering the merits of the case, we provided Williams with an opportunity to cure the defect. Williams filed a copy of a judgment entered on January 23, 2019, in favor of Fremont Corners. Recognizing that this does not rectify the defective notice of appeal, we deem the notice of appeal as taken from the later-filed judgment. (*Lat v*. *Farmers New World Life Ins*. *Co*. (2018) 29 Cal.App.5th 191, 193, fn. 1; *Powell v*. *Kleinman* (2007) 151 Cal.App.4th 112, 121.)

6

fact exist to reinstate the action. (*Wiener*, *supra*, 32 Cal.4th at p. 1142.) In doing so, we view the evidence in the light most favorable to Williams as the party opposing summary judgment, liberally construing his evidentiary submissions and strictly scrutinizing the evidence submitted by Fremont Corners. (*Ibid*.) The Code of Civil Procedure places "the initial burden on the defendant moving for summary judgment and shift[s] it to the plaintiff upon a showing that the plaintiff cannot establish one or more elements of the action." (*Wiener*, *supra*, at p. 1142; see Code Civ. Proc., § 437c, subds. (o), (p)(2).) In this appeal, we consider only whether the trial court erred in finding that Fremont Corners did not owe a legal duty to protect Williams against the criminal conduct of a third party.

### B. *Guiding Principles Regarding a Landowner's Duty to Protect Against Injury From Third Party Criminal Conduct on the Premises*

Cases involving landowner liability to persons injured on the premises due to the criminal conduct of a third party have formed a well-trodden path to the California Supreme Court. Our high court has considered a landowner's duty to protect against the foreseeable criminal acts of third parties under various circumstances and has articulated the following guiding principles. Landowners under California law are required to maintain land in their possession and control in a reasonably safe condition. (*Ann M*., *supra*, 6 Cal.4th at p. 674.) The underlying principle, set forth in Civil Code section 1714, subdivision (a), is that "[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . ." This rule " 'establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others.' " (*Vasilenko v*. *Grace Family Church* (2017) 3 Cal.5th 1077, 1083 (*Vasilenko*).)

" ' "Courts . . . invoke[] the concept of duty to limit generally 'the otherwise potentially infinite liability which would follow from every negligent act . . . .' " ' " (*Vasilenko*, *supra*, 3 Cal.5th at p. 1083.) Our Supreme Court has explained that an

7

exception to the general rule of Civil Code section 1714 must be " ' "clearly supported by public policy." ' " (*Vasilenko*, *supra*, at p. 1083.) Courts look to what are commonly called "the *Rowland* factors" in determining whether policy considerations favor such an exception. (*Ibid*.) These are " 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' (*Rowland* [*v*. *Christian* (1968)] 69 Cal.2d [108,] 113.)" (*Ibid*.)

One well-established limit is that there is no duty to act to protect others from the conduct of third parties. (*Delgado*, *supra*, 36 Cal.4th at p. 235.) In the case of a landlord, however, the general duty of maintenance that is owed to tenants and patrons "has been held to include the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures." (*Ann M*., *supra*, 6 Cal.4th at p. 674.) This exception to the "general no-duty-to-protect rule" comes under the " 'special relationship' doctrine" (*Delgado*, *supra*, at p. 235), which courts have found "in cases involving the relationship between business proprietors such as shopping centers, restaurants, and bars, and their tenants, patrons, or invitees." (*Ibid*.; accord *Morris v*. *De La Torre* (2005) 36 Cal.4th 260, 264 [" 'special relationship' " between businesses and their patrons or invitees "imposes upon the proprietor a duty to take reasonable measures to protect such persons against foreseeable criminal attack"].)

As explained more fully in *Ann M*., "the question of the scope of a landlord's duty to provide protection from foreseeable third party crime . . . is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed." (*Ann M*., *supra*, 6 Cal.4th at p. 678.) Where " ' "the burden of preventing future harm is

great, a high degree of foreseeability may be required" ' " (*id*. at p. 678) but " ' "where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required." ' " (*Id*. at pp. 678-679.) "[D]uty in such circumstances is determined by a balancing of 'foreseeability' of the criminal acts against the 'burdensomeness, vagueness, and efficacy' of the proposed security measures." (*Id*. at p. 679.)

*Ann M*. illustrates how these principles apply. The plaintiff, an employee at a store in a strip mall shopping center, was raped by an unknown assailant after he entered the store armed with a knife. (*Ann M*., *supra*, 6 Cal.4th at pp. 670-671.) She alleged that the defendants who owned and operated the shopping center were negligent in failing to provide adequate security to protect her from an unreasonable risk of harm. (*Id*. at p. 672.) The court found that Ann M. had not demonstrated that violent criminal assaults were "sufficiently foreseeable" to impose a duty upon the shopping center to provide security guards in the common areas. (*Id*. at p. 679.) It explained that given the costs of hiring private security guards, "a high degree of foreseeability" was required to find that the scope of the landowner's duty of care included such measures. (*Ibid*.)

Although Ann M. alleged that previous assaults and robberies had occurred in the shopping center, the court found "no evidence" that the shopping center "had notice of these incidents." (*Ann M*., *supra*, 6 Cal.4th at p. 679.) The court reasoned that "[w]hile a landowner's duty includes the duty to exercise reasonable care to discover that criminal acts are being or are likely to be committed on its land" (*ibid*.), the shopping center had demonstrated that it had " 'a standard practice . . . to note or record instances of violent crime' and that [its] records contain[ed] no reference to violent criminal acts prior to Ann M.'s rape" (*id*. at p. 680). The court further reasoned that even assuming the shopping center had notice of the previous incidents, they were not similar in nature to the assault that she suffered, and neither did other evidence related to the presence of transients or the statistical crime rate of the surrounding area satisfy her burden. (*Ibid*.)

9

The court thus affirmed the grant of summary judgment for the shopping center since it owed no duty to Ann M. to provide security guards in the common areas. (*Ibid*.)

California Supreme Court decisions since *Ann M*. "expressly reaffirm the sliding-scale balancing formula articulated" by the court for determining when heightened foreseeability is required to impose a special relationship-based duty upon the owner or proprietor. (*Delgado*, *supra*, 36 Cal.4th at p. 243.) The standard is that "imposition of a high burden requires heightened foreseeability, but a minimal burden may be imposed upon a showing of a lesser degree of foreseeability." (*Ibid*.; accord *Morris*, *supra*, 36 Cal.4th at p. 271.) So "[i]n circumstances in which the burden of preventing future harm caused by third party criminal conduct is great or onerous (as when a plaintiff, such as in *Ann M*., asserts the defendant had a legal duty to provide guards . . .), heightened foreseeability—shown by prior similar criminal incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location— will be required. By contrast, in cases in which harm can be prevented by simple means or by imposing merely minimal burdens, only 'regular' reasonable foreseeability as opposed to heightened foreseeability is required." (*Delgado*, *supra*, at pp. 243-244, fn. 24.)

The foregoing principles guide our evaluation of Williams' challenge to the trial court's summary judgment determination.

## C. *Fremont Corners Did Not Owe a Duty to Williams*

Williams seeks to distinguish this case from *Ann M*. on the question of duty. He argues that Fremont Corners failed to meet its initial burden as the moving party to make a prima facie showing regarding its exercise of reasonable care to discover criminal acts being committed or likely to be committed on the property. He further argues that the evidence in the record supports a reasonable inference that Fremont Corners had general

10

knowledge of criminal conduct at the shopping center, such that the exercise of reasonable care would have established the foreseeability of his assault under *Ann M*.

Williams relies on the deposition testimony of Jay Murray to contrast Murray's approach to managing Fremont Corners with the "uncontroverted evidence" in *Ann M*. that the shopping center "had implemented 'a standard practice . . . to note or record instances of violent crime.' " (*Ann M*., *supra*, 6 Cal.4th at p. 680.)

Murray testified, when asked what he did to determine whether criminal conduct was occurring on the property, that he would listen to the tenants, if they had anything to report. He stated that as the sole manager of Fremont Corners,[3] the tenants would call him if there was a problem, or they could talk with him during his onsite visits once or twice a week. He would stroll around and ask if everything was okay, but "did not specifically ask if there has been any violence or criminal activity." He explained that if the tenants "wave at me and I wave and there's nothing to be said," he "just keep[s] walking."

Murray also would check the lighting system every two to three months and replace broken bulbs or fixtures. He explained that there were about a dozen video cameras positioned under the eaves of the buildings, over the sidewalks, recording "24/7." The video system saved about one month's worth of data. The footage was not reviewed or monitored, though there were a few times that the police department requested surveillance footage due to a reported incident. Murray would then arrange for his video security service to copy the footage for the police. Murray recalled two such instances before 2012. One involved "some form of altercation" that occurred between the Peacock Lounge and the neighboring store, which broke the store window. Another was around 2008 when a tanning salon was burglarized. There may have been a third

---

[3] Fremont Corners' only other employee is Murray's mother, who pays the bills and has not visited the property for approximately 35 years.

11

incident as well in which he was contacted by the police about assaultive behavior on the property.

Regarding the Peacock Lounge, Murray estimated that he had visited it over 100 times from 2009 to 2012. He generally would check in on the bar in the morning or afternoon but had never visited in the mid or late evening. Someone at the Peacock Lounge had made him aware that they had a bouncer on site for their events. As he understood it, the bouncer or security guard was responsible "to keep things civil and noncriminal" among the patrons. He explained, "There were a lot of people. There were more people coming through, so . . . ." He agreed with the statement that "with more people, a change in character of the bar, that there was a greater concern in your mind that there were going to be fights or problems . . . ." However, he "felt that they had their own security, that they were covering the problem they were creating."

Williams contends that given the police department's prior requests for security footage, Fremont Corners had general knowledge of prior criminal conduct at the shopping center. He argues that Murray's informal check-ins with tenants fail to establish that Fremont Corners exercised reasonable care to discover the occurrence of criminal conduct on its property, particularly given that Fremont Corners did not routinely or even intermittently monitor the security camera footage and did not require tenants to report criminal activity to the shopping center management. He further contends that the assault outside the bar was highly foreseeable, as shown by the subpoenaed police reports documenting several instances of violent criminal conduct in the months before his assault. According to Williams, this information was available to Fremont Corners, had it exercised its duty of reasonable care to discover those incidents.

We evaluate Williams' claim according to the following analytical process. " 'First, the court must determine the specific measures the plaintiff asserts the defendant should have taken to prevent the harm. This frames the issue for the court's determination by defining the scope of the duty under consideration. Second, the court

12

must analyze how financially and socially burdensome these proposed measures would be to a landlord, which measures could range from minimally burdensome to significantly burdensome under the facts of the case. Third, the court must identify the nature of the third party conduct that the plaintiff claims could have been prevented had the landlord taken the proposed measures, and assess how foreseeable . . . it was that this conduct would occur. Once the burden and foreseeability have been independently assessed, they can be compared in determining the scope of the duty the court imposes on a given defendant. The more certain the likelihood of harm, the higher the burden a court will impose on a landlord to prevent it; the less foreseeable the harm, the lower the burden a court will place on a landlord.' " (*Castaneda*, *supra*, 41 Cal.4th at p. 1214, quoting *Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 285.) While "other *Rowland* factors may come into play in a given case, . . . the balance of burdens and foreseeability is generally primary to the analysis." (*Castaneda*, *supra*, at p. 1214.)

### 1. *Williams Fails to Fully Identify Specific Measures*

Williams' argument on appeal, like his opposition to the summary judgment motion, fails to fully identify the measures that Fremont Corners should have taken to prevent the harm. The three areas in which he asserts that Fremont Corners failed its duty to exercise reasonable care to discover unsafe conditions, including the potential of harmful third-party acts, may be described as (1) a failure to inquire about criminal activities reported to the police, (2) a failure to establish a policy or procedure to require tenants to report occurrences of criminal activities to Fremont Corners, and (3) a failure to review security camera footage.

Viewed in the light most favorable to Williams and drawing all reasonable inferences in his favor (*Wiener*, *supra*, 32 Cal.4th at p. 1142), we agree that the evidence above demonstrates that Murray was generally aware of the possibility of fights erupting

13

at or near the bar.  But a general knowledge of the *possibility* of violent criminal conduct is not in itself enough to create a duty under California law, as shown by the cases discussed below.

The case that best illustrates this point is *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181 (*Sharon P.*), disapproved on other grounds by *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, footnote 19 and *Reid v. Google, Inc.*, *supra*, 50 Cal.4th at page 527, footnote 5.  In *Sharon P.*, our Supreme Court found the occurrence of a sexual assault in a parking garage at gunpoint "not sufficiently foreseeable to support" the requirement that the defendant provide security in the garage.  (*Sharon P.*, *supra*, at p. 1185.)  The court considered evidence that during the 10 years preceding the attack, the garage manager knew of no incident involving a physical assault in the garage, though he knew about armed robberies at the bank on the building's ground floor.  (*Id.* at pp. 1185, 1186.)  The plaintiff also submitted police department records showing the crime statistics for the 50 square blocks surrounding the building in the two years preceding the attack, including two rapes the year before.  (*Id.* at p. 1186.)  She also showed that the garage's condition had deteriorated in the months before her attack, with light outages that left several darkened areas and some nonfunctioning security cameras. (*Ibid.*)

The high court reasoned that the prior armed robberies targeting a bank on the premises "were not sufficiently similar to the sexual assault inflicted upon plaintiff to establish a high degree of foreseeability that would justify the imposition of" hiring guards, even if considered in combination with the statistical crime rate and deteriorating garage conditions.  (*Sharon P.*, *supra*, 21 Cal.4th at p. 1191, citing *Ann M.*, *supra*, 6 Cal.4th at p. 680.)  The court rejected the argument that certain characteristics of underground parking structures made them "inherently dangerous" and the crime reasonably foreseeable.  (*Sharon P.*, *supra*, at p. 1192.)  It also rejected the argument that violent third-party crime in underground garages was sufficiently foreseeable to require

14

the defendants "to provide protection by simple and less burdensome means" than hiring security guards. (*Id*. at p. 1196.) The court questioned the efficacy of the plaintiff's proposed measures, which included lighting, security cameras, and periodic walk-throughs by existing personnel. (*Ibid*.) It explained: "It is difficult to quarrel with the abstract proposition that the provision of improved lighting and maintenance, operational surveillance cameras and periodic walk-throughs of the tenant garage owned and operated by defendants might have diminished the risk of criminal attacks occurring in the garage. But absent any prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location, we cannot conclude defendants were required to secure the area against such crime." (*Id*. at p. 1199.)

This case resembles *Sharon P*. in that Williams seeks to rely on a general awareness of criminal conduct occurring on the premises, the nature of the bar business as increasing the likelihood of criminal incidents, and some form of statistical evidence or police reports of other similar incidents of which the landowner was not aware. However, in *Sharon P*. the court found that even considering all those factors together, there was no evidence of sufficiently similar criminal conduct to establish the high degree of foreseeability required for the landowner to provide security guards. (*Sharon P*., *supra*, 21 Cal.4th at p. 1191.) The court declined to impose a duty on the parking garage owner based upon the reasonable but unproven notion that improved facilities operations and oversight "might have diminished the risk of criminal attacks occurring in the garage." (*Id*. at p. 1199.)

Here, we cannot disagree that as an "abstract proposition" (*Sharon P*., *supra*, 21 Cal.4th at p. 1199), one or more of the three measures listed by Williams (such as requiring tenants to report known criminal activities, or hiring personnel to regularly review security footage) might have increased the foreseeability of an assault occurring outside of the bar. But in opposing the summary judgment motion, Williams has not asserted what measures Fremont Corners should have taken to prevent the harm that he

15

endured. This hinders Williams' effort to establish duty for his negligence and premises liability claims, because " 'the specific measures the plaintiff asserts the defendant should have taken *to prevent the harm*' " (*Castaneda*, *supra*, 41 Cal.4th at p. 1214, italics added) are what " 'defin[e] the scope of the duty under consideration.' " (*Ibid.*)

We nevertheless proceed, for the sake of completion, by analyzing the duty to be imposed on Fremont Corners in relation to increased security measures for the parking area outside of the Peacock Lounge. (See *Ann M.*, *supra*, 6 Cal.4th at p. 679 [reviewing court determines duty by balancing " 'foreseeability' of the criminal acts against the 'burdensomeness, vagueness, and efficacy' of the proposed security measures"].) This is consistent with the allegations of the complaint, in which Williams has asserted a list of duties of reasonable care for his protection, including by way of example: to provide adequate security for the customers and invitees of the bar and the premises; to develop and implement adequate security policies, measures, and procedures; to have an adequate number of competent security guards to protect customers and invitees; to adequately monitor the entrances and exits to and from the bar, the area directly outside of the bar, and the parking lots on the premises used to access the bar; and to monitor the parking lots on the premises used to access the bar.

### 2. *Williams Cannot Establish the Requisite Foreseeability For Imposing the Asserted Security Measures*

Our next steps are to analyze the burden of the proposed measures to the landowner and to assess how foreseeable was the third-party conduct that the plaintiff claims could have been prevented had the landlord taken the proposed measures. (*Castaneda*, *supra*, 41 Cal.4th at p. 1214.) We compare the burden and foreseeability in determining the scope of the duty to be imposed on the defendant. (*Ibid.*)

It is undisputed that the security measures taken by Fremont Corners at the time of the assault on Williams consisted of maintaining the lighting in the parking lot and the security cameras under the eaves of the buildings, which recorded onsite to an

unmonitored digital video recorder. Fremont Corners also employed a parking guard who redirected certain vehicles to a back parking lot; the parking guard was not a security guard. We infer from the measures asserted in Williams' complaint that the duty to be imposed on Fremont Corners includes providing security guards or patrols on the premises in the area of the bar and adjacent parking lots. Williams also claims more generally the need for "adequate security policies, security measures and security procedures necessary to protect" Williams and other customers and invitees.

The duty to take proactive security measures, as Williams alleges, comes under what our Supreme Court has described as "a proprietor's duty to take *preventative* measures to guard against possible *future* criminal conduct" (*Morris v. De La Torre*, *supra*, 36 Cal.4th at p. 271), triggering the need to show heightened foreseeability under *Ann M.* (*Ibid.*) This is due to the high financial and social cost of requiring a landowner to provide security guards, or to take other preventative measures. In *Ann M.*, the court explained that "[w]hile there may be circumstances where the hiring of security guards will be required to satisfy a landowner's duty of care, such action will rarely, if ever, be found to be a 'minimal burden.' The monetary costs of security guards is not insignificant. Moreover, the obligation to provide patrols adequate to deter criminal conduct is not well defined." (*Ann M.*, *supra*, 6 Cal.4th at p. 679.) *Sharon P.* echoed *Ann M.* on this point, citing "the vagueness of the obligation to provide patrols adequate to deter crime and the significant monetary and social costs that are implicated in imposing such an obligation . . . ." (*Sharon P.*, *supra*, 21 Cal.4th at p. 1190.) For this reason, "the requisite degree of foreseeability 'rarely, if ever, can be proven in the absence of prior similar incidents of violent crime on the landowner's premises.' " (*Ibid.*) "To hold otherwise would be to impose an unfair burden upon landlords and, in effect, would force landlords to become the insurers of public safety, contrary to well-established policy in this state." (*Ann M.*, *supra*, at p. 679.)

17

Accordingly, the standard that applies to Williams' allegations for Fremont Corners' duty in this case is one of heightened foreseeability, as articulated in *Delgado*. "[O]nly when 'heightened' foreseeability of third party criminal activity on the premises exists—shown by prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults in that location—does the scope of a business proprietor's special-relationship-based duty *include an obligation to provide guards* to protect the safety of patrons." (*Delgado*, *supra*, 36 Cal.4th at p. 240.) Williams is correct that foreseeability is measured not by the particular plaintiff's injury but by " 'the general character of the event or harm . . . .' " (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1145.)

It is apparent in comparing the facts of this case to those in *Anne M.* and *Sharon P.* that the incidents known to Fremont Corners in the years preceding Williams' assault, including a burglary, a broken window next-door to the bar, and an assault for which the police requested security camera footage, do not meet this heightened standard. (See *Sharon P.*, *supra*, 21 Cal.4th at p. 1191 [prior armed robberies at bank above parking garage were not similar enough to the sexual assault of the plaintiff to establish high degree of foreseeability]; *Ann M.*, *supra*, 6 Cal.4th at p. 679 [shopping center did not have notice of prior similar, violent assaults on the premises]; see also *Delgado*, *supra*, 36 Cal.4th at p. 245 [plaintiff attacked in bar parking lot had not demonstrated "heightened foreseeability in the form of prior similar incidents or other indications of a reasonably foreseeable risk of a violent criminal assault"].[4]) Drawing all reasonable

_____

[4] *Delgado* involved an assault in the parking lot of a bar which employed two guards—one stationed inside and one outside. (*Delgado*, *supra*, 36 Cal.4th at pp. 229-230.) The plaintiff left the bar at the suggestion of the inside guard; but the outside guard was not at his station, and the plaintiff was assaulted by a gang of men in the parking lot. (*Id*. at pp. 231-232.) We note that while the court ultimately found a legal duty on the part of the bar's proprietor, it rested that determination not on the *foreseeability* of the attack in the parking lot (like at issue in this case), but on other (continued)

18

inferences from the evidence in Williams' favor, we find at most that Fremont Corners was on notice of the possibility of fights, given Murray's acknowledgment that "more people" and the bar's changing character could cause problems. Knowing there is a general potential for rowdy or troublesome conduct by bar patrons, however, does not make the category of aggressive parking lot assaults reasonably foreseeable, any more so than the presumed awareness of previous assaults and robberies or problems with transients on the property establishes the foreseeability of a violent sexual assault. (See *Ann M.*, *supra*, 6 Cal.4th at pp. 679-680; *Sharon P.*, *supra*, 21 Cal.4th at p. 1191.)

There is also the question of whether a security presence in the parking area would have deterred the assault or prevented the harm. In *Castaneda*, the California Supreme Court applied the heightened foreseeability standard to assess whether the owner of a mobilehome park had a duty to hire and deploy security guards to prevent gang violence. (*Castaneda*, *supra*, 41 Cal.4th at p. 1222.) The plaintiff in that case was shot and injured when a gang confrontation erupted at the mobilehome across the street. (*Id*. at p. 1209.) The plaintiff argued that a prior "incident of gang gunplay on an adjacent empty lot, which involved a resident of the mobilehome park, together with the gang graffiti, complaints of gang members and 'wannabes' living at the park, and other crimes occurring there was sufficient to put [the defendant] on notice that gang violence was

circumstances giving rise to liability under the special relationship doctrine. (*Id*. at pp. 240-241.) Such circumstances include a "duty to undertake relatively simple measures" (*id*. at p. 241) such as warning patrons of known dangers, taking "reasonable" steps to protect from "imminent or 'ongoing' criminal conduct" (*ibid*.), and for a proprietor who serves intoxicating drinks to customers on the premises, " 'exercis[ing] reasonable care to protect his patrons from injury at the hands of fellow guests' " (*ibid*.). The court concluded that the record established the existence of "a minimally burdensome duty" (*id*. at p. 245), on the part of the proprietor to respond to the events unfolding in its presence by warning the gang away from the plaintiff as he tried to leave the premises, or by checking the outside guard post before sending the plaintiff out. (*Id*. at pp. 246-247.)

19

likely to erupt at the park if no protective measures were taken." (*Id.* at p. 1222.) Despite this arguably robust showing, the court rejected the notion that the claimed security measures would have prevented the harm to plaintiff. (*Id.* at p. 1223.)

Nor does Fremont Corners' alleged failure to exercise reasonable care to *discover* criminal activity that is occurring or is likely to occur on the premises remedy the foreseeability gap. In *Ann M.*, the court deemed it adequate that the shopping center had a " 'standard practice . . . to note or record instances of violent crime' . . . ." (*Ann M.*, *supra*, 6 Cal.4th at p. 680.) Fremont Corners' practice in this case consisted of Murray's weekly or semiweekly visits to the property, when he would make himself available to tenants and engage in informal check-ins. Murray also occasionally responded to requests from the police department for security footage, though he did not review or retrieve the footage himself. Williams contends that these actions fell short of Fremont Corners' duty to exercise reasonable care to discover criminal incidents on the property, given that Fremont Corners was on notice of at least some prior criminal conduct and of the increased traffic and changing character of the bar. He urges that under those circumstances, a "reasonably thoughtful" owner (*Kesner v. Superior Court*, *supra*, 1 Cal.5th at p. 1145) would undertake to discover unlawful conduct, whether by reviewing the video surveillance footage, asking tenants directly about criminal activity, or requiring tenants under their leases to report known criminal activity. Williams argues that these measures would impose a minimal burden on Fremont Corners.

We find Williams' position to be unsupported by case authority that requires only the exercise of reasonable care to discover the occurrence or likely occurrence of criminal acts (*Ann M.*, *supra*, 6 Cal.4th at p. 679), and untenable for owners like Fremont Corners.

It is true that Fremont Corners did not have a precise system to track problematic occurrences, and relied on tenants to volunteer information to Murray when asked. On the other hand, it is highly uncertain that requiring tenants to report known criminal activity, or hiring personnel to review security footage, would uncover criminal activity

20

more effectively than Murray's informal process of talking to tenants.[5]  Our Supreme Court conducted a similar calculus in *Sharon P*., where it rejected the efficacy and practicality of security measures such as using surveillance cameras and requiring existing personnel to do periodic walk-throughs of the underground garage where the plaintiff was attacked.  (*Sharon P*., *supra*, 21 Cal.4th at p. 1196.)  The court questioned whether the proposed measures "would have been any less burdensome than the hiring of security guards" (*ibid*.) and observed that "surveillance cameras may be ineffectual to protect against crime unless there are employees who are available to continuously monitor video transmissions and respond effectively when suspicious or criminal behavior is observed."  (*Ibid*.)

In light of this precedent and the Supreme Court's observation that the hiring of security guards imposes a significant cost for a "not well defined" deterrence benefit (*Ann M*., *supra*, 6 Cal.4th at p. 679), we conclude that Williams' proposed measures have even more of an attenuated relationship to preventing the type of harm that Williams suffered.  Given that "[f]oreseeability and the extent of the burden to the defendant are ordinarily" considered the "crucial" considerations in evaluating legal duty (*Castaneda*, *supra*, 41 Cal.4th at p. 1213), it is unnecessary here to separately review the remaining *Rowland* factors.  (See *Sakai v*. *Massco Investments*, *LLC* (2018) 20 Cal.App.5th 1178, 1188, fn. 1 [noting in relevant part that the factor of moral blame " 'require[s] a higher degree of moral culpability' " and " ' "is generally not sufficient to tip the balance of the *Rowland* factors in favor of liability," ' " and that the policy of preventing future harm is not served by imposing costs on the defendant in the absent of the requisite

_____

[5] Using the subpoenaed reports from the city's public safety department (which the trial court deemed admissible only "to show potential notice to Fremont Corners") as an approximation of the type of information that Fremont Corners presumably should have known, we note that the three reported incidents occurred in the early morning hours when tenants are unlikely to be present, and only one incident involved eyewitnesses and patrons of the Peacock Lounge.

foreseeability].) In sum, absent admissible evidence of "prior similar incidents or other indications of a reasonably foreseeable risk of violent criminal assaults" (*Delgado*, *supra*, 36 Cal.4th at p. 240), Williams has not carried his burden in opposing the motion for summary judgment to establish that Fremont Corners had a legal duty to implement additional measures to uncover incidents of criminal acts on the premises and to secure the premises against future, possible third-party conduct.

## III. DISPOSITION

The judgment is affirmed. Fremont Corners is entitled to recover its costs on appeal.

_____
                       Premo, J.

WE CONCUR:

_____
          Greenwood, P.J.

_____
            Elia, J.

Williams v. Fremont Corners, Inc.
H043218

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TAYLER L. WILLIAMS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>FREMONT CORNERS, INC.,<br><br>    Defendant and Respondent. | H043218<br>(Santa Clara County<br> Super. Ct. No. 114CV262382)<br><br>ORDER FOR PUBLICATION |

BY THE COURT:

    The written opinion which was filed on June 24, 2019, has now been certified for publication pursuant to rule 8.1105(b) of the California Rules of Court, and it is therefore ordered that the opinion be published in the official reports.

_____
                                    Premo, J.

_____
                                    Greenwood, P.J.

_____
                                    Elia, J.

| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 114CV262382 |
| --- | --- |
| Trial Judge: | Hon. Patricia M. Lucas |
| Counsel for Plaintiff/Appellant:<br>Tayler L. Williams | The Kern Law Group<br>Reńe J. Kern, Jr.<br>Gaetano J. Verrastro |
| Counsel for Defendant/Respondent:<br>Fremont Corners, Inc. | The Thomas Law Firm<br>Bradley S. Thomas |

Williams v. Fremont Corners, Inc.
H043218