Filed 8/28/25  Adame v. JPMorgan Chase Bank CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| GIDEON ADAME, | B341251 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. 22STCV15119) |
| JPMORGAN CHASE BANK, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa R. Jaskol, Judge. Affirmed.

Ivy Crest Attorneys, Christian I. Oronsaye and Kingsley Opia Enwemuche for Plaintiff and Appellant.

Dunbar & Derossi and Matthew D. Derossi for Defendant and Respondent.

_____

Plaintiff Gideon Adame appeals the trial court's judgment in his negligence and premises liability action against Defendant JPMorgan Chase Bank, N.A., arising from an assault by Mohammed Adam. The trial court granted JPMorgan's motion for summary judgment on the ground JPMorgan had no duty to protect Plaintiff from Adam because the assault was unforeseeable. We perceive no error in the judgment, and we affirm.

## FACTUAL BACKGROUND

On the morning of June 18, 2021, Plaintiff visited JPMorgan's University Northridge Chase Bank branch in Northridge, California, to complete an international wire transfer.[1] As Plaintiff entered the bank, Adam was leaving. Adam was an unhoused individual.

Several bank employees explained what had transpired while Adam was at the bank that first time. Personal Banker Javier Maldonado stated the bank teller refused to cash a third party check for Adam because he was not a JPMorgan account holder and could not provide two forms of identification. The teller told Adam to return when he had the required identification. Adam "raise[d] his voice aggressively" and "left the bank branch yelling incoherently." The teller later told police she could hear Adam yelling from outside the bank.

Plaintiff testified that as Adam left the bank, Adam was yelling at a bank patron who was running away from him and

---

[1]     Because this appeal arises from an order granting JPMorgan's motion for summary judgment, we construe the facts in the light most favorable to Plaintiff. (*Williams v. Fremont Corners, Inc.* (2019) 37 Cal.App.5th 654, 662 (*Williams*).)

2

was shouting something to the effect of " 'Give me my gun, give me my gun.' " Plaintiff also thought "[Adam] held onto this guy's hand." However, Plaintiff "did not even pay attention" to Adam's behavior.

Bank employee Javier Manzano assisted Plaintiff with his transaction at the bank. Manzano heard the commotion caused by Adam the first time he was in the bank, and took a break to observe. He watched as Adam walked down the middle of the street, yelling toward another individual who walked away from him. Manzano was concerned, so he called the police and then returned to assisting Plaintiff. Another bank employee told police that when Adam was outside the bank, Adam "confronted another person and . . . appeared to want to fight with that person."

Approximately five minutes after Adam had left the bank, he returned. Adam was yelling inside the bank, and Manzano recognized his voice but believed he was using a different language. Manzano called the police again because he "felt that things were escalating." Adam was aggressive and agitated, and stated "This is my bank, I will pay you guys double." He was also "yelling nonsensical statements." Plaintiff testified Adam was yelling, "Give me my money. You guys owe me my money." Plaintiff testified he thought "[Adam] hit, like, a lady or a guy."

Shortly after, while Plaintiff was speaking with a bank employee, "Adam approached [them]." Adam asked Plaintiff if he was from Africa, and Plaintiff responded yes. Within seconds, "[Adam] threw a punch at Plaintiff." Adam and Plaintiff became "confrontational with each other and started fighting." Adam picked up a coffee table and threw it at Plaintiff. Several bank employees restrained Adam until the police arrived. Plaintiff

suffered injuries, including cuts on his hand and inside his upper lip, bruising, and pain in his neck, upper back, and arms.

Prior to the day of the assault, Plaintiff had observed other unhoused individuals near the bank who sometimes yelled at patrons, including at him. He testified that what he had witnessed there was "pretty typical of what you see in L.A." Nevertheless, he had not seen that behavior escalate into a punch or a fight or any violence. He had also never seen any of those individuals inside the bank.

JPMorgan introduced testimony from two employees that in the 10 years before the assault, they had never witnessed any physical fights inside or outside the bank branch. JPMorgan's records showed that in the eight years preceding the assault, it had not "receiv[ed] any communication . . . that [anyone] had been assaulted or involved in a physical fight while inside the . . . [b]ank branch." Plaintiff testified "[t]he bank has always been . . . very peaceful."

## PROCEDURAL HISTORY

On May 6, 2022, Plaintiff filed this action for negligence and premises liability against JPMorgan. JPMorgan cross-complained against Adam for indemnity. JPMorgan later moved for summary judgment on Plaintiff's causes of action on the ground it had no duty to protect him from Adam's unforeseeable criminal conduct. Plaintiff opposed summary judgment, arguing JPMorgan assumed a duty to protect him by having a security guard at the bank,[2] and JPMorgan had a duty to prevent Adam from entering the bank a second time.

---

[2] JPMorgan disputed a security guard was present that day. That denial was supported by Plaintiff's own testimony that the

4

The trial court granted JPMorgan's motion for summary judgment on June 10, 2024. It determined JPMorgan carried its initial burden to show it had no duty to protect Plaintiff from Adam's criminal assault because there had been no previous reports of violent attacks at the bank in the 10 years before the assault. The trial court rejected Plaintiff's argument that the ostensible presence of a security guard created a duty on the part of JPMorgan because Plaintiff did not present evidence a security guard increased his risk of harm or that he reasonably relied on the guard's presence to his detriment. The court also determined Adam's previous disruptive behavior of yelling and shouting at the bank did not put JPMorgan on notice of a risk of harm to Plaintiff because there had been no similar prior violent incidents.

JPMorgan requested dismissal with prejudice of its cross-complaint on July 25, 2024. While that request was pending, the trial court dismissed the cross-complaint without prejudice on July 29, 2024. (See Code Civ. Proc.,[3] § 581, subd. (b)(3).) The clerk served the dismissal order on the parties the same day. The court later denied JPMorgan's request for dismissal on the ground the cross-complaint had already been dismissed.

Plaintiff timely appealed. (See Cal. Rules of Court, rule 8.104(a)(1); see also *Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1105–1106.)

---

bank "had no security guard until after the incident." On appeal, Plaintiff has not asserted any argument based upon the ostensible presence of a security guard.

[3]    Undesignated statutory references are to the Code of Civil Procedure.

# DISCUSSION

## I. The Trial Court Did Not Err in Granting JPMorgan's Motion for Summary Judgment

Plaintiff's causes of action for negligence and premises liability both require that JPMorgan have a legal duty to protect Plaintiff from Adam's assault. (*Williams*, *supra*, 37 Cal.App.5th at p. 662; see also *Morris v. De La Torre* (2005) 36 Cal.4th 260, 264 (*Morris*) [elements of negligence].) The trial court determined, as a matter of law, JPMorgan had no duty to protect Plaintiff from Adam's assault. We agree.

### A. Standard of Review

We independently review a trial court's order granting a defendant's motion for summary judgment. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142; see also *Williams*, *supra*, 37 Cal.App.5th at p. 662.) A defendant moving for summary judgment bears the initial burden to demonstrate the plaintiff cannot establish one or more elements of his action; if he succeeds, the burden shifts to the plaintiff. (*Wiener*, *supra,* at p. 1142.)

### B. A Proprietor Has Limited Liability for Criminal Acts of Third Parties

"[A]s a general matter, there is no duty to act to protect others from the conduct of third parties," unless a special relationship exists between the plaintiff and the defendant. (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235 (*Delgado*).) There is a special relationship between a business proprietor and his patrons. (*Ibid.*) The trial court recognized (and JPMorgan does not dispute) that JPMorgan had a special relationship with Plaintiff, its banking customer.

6

"[W]hen determining the existence and scope of the duty to protect business invitees from the criminal conduct of third parties, the court balances the foreseeability of the harm against the burden of the duty. If the burden is great, a high foreseeability of harm may be required, but a lesser degree of foreseeability may be required if ' " 'there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means.' " ' " (*Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814, 819; see also *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213 ["[f]oreseeability and the extent of the burden to the defendant are ordinarily the crucial considerations"].) That means a "showing of heightened foreseeability is [not necessarily] required in all premises liability cases." (*Delgado*, *supra*, 36 Cal.4th at p. 241.) Rather, we apply a "sliding-scale balancing formula" so that "imposition of a high burden requires heightened foreseeability, but a minimal burden may be imposed upon a showing of a lesser degree of foreseeability." (*Id.* at p. 243; see also *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 538 ["[w]ith criminal conduct, an 'extraordinarily high degree of foreseeability' is necessary"].)

With regard to third party criminal conduct, our Supreme Court has explained there are two types of duties owed by a business to its patrons. (*Verdugo v. Target Corp.* (2014) 59 Cal.4th 312, 337 (*Verdugo*).) First, a business has a "duty to take precautionary steps, in advance of any specific criminal activity, to provide protections to its patrons against criminal conduct that may occur in the future." (*Ibid.*) But in the absence of evidence of prior similar criminal incidents, a business "has no special-relationship-based duty to provide security guards or other similarly burdensome measures designed to prevent *future*

7

criminal conduct (which measures are required only upon a showing of 'heightened foreseeability').” (*Morris, supra,* 36 Cal.4th at p. 270; see *Delgado, supra*, 36 Cal.4th at p. 240.)

Second, a business has “a . . . duty to take immediate action in response to ongoing criminal activity that threatens the safety of its patrons.” (*Verdugo, supra*, 59 Cal.4th at p. 337.) So even if a business has no duty to protect a patron from future criminal conduct, he “nevertheless owes a special-relationship-based duty to undertake reasonable and minimally burdensome measures to assist customers or invitees who face danger from imminent or ongoing criminal assaultive conduct occurring upon the premises.” (*Morris, supra*, 36 Cal.4th at p. 270.)

## C. Adam's Assault Was Unforeseeable Under the “Heightened Foreseeability” Standard

If a “plaintiff produce[s] insufficient evidence of heightened foreseeability in the form of prior similar incidents or other indications of a reasonably foreseeable risk of a violent criminal assault on defendant's premises,” then that demonstrates the “defendant owed no special-relationship-based duty to provide guards or undertake other similarly burdensome preventative measures.” (*Delgado, supra*, 36 Cal.4th at p. 245.) “[T]he requisite degree of foreseeability rarely, if ever, can be proven in the absence of prior similar incidents.” (*Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 895.)

JPMorgan introduced evidence showing it had received no reports of any violent physical attacks inside the bank branch in the eight years preceding the assault. The trial court determined that evidence fulfilled JPMorgan's initial burden to show it had no duty to take precautionary steps to protect Plaintiff from a

8

potential assault by Adam because it was unforeseeable. Plaintiff introduced no evidence to the contrary.

We agree with the trial court that Plaintiff did not raise a triable issue of fact as to whether JPMorgan had a duty to take preventative measures to protect him from an assault like Adam's because there were no "prior similar incidents or other indications of a reasonably foreseeable risk of a violent criminal assault on defendant's premises." (*Delgado, supra*, 36 Cal.4th at p. 245.) That is, in light of the absence of prior violent incidents, JPMorgan owed no "duty to take *preventative* measures to guard against possible *future* criminal conduct." (*Morris, supra*, 36 Cal.4th at p. 271.)

Plaintiff does not seriously dispute that conclusion. Instead, he argues Adam's behavior in the bank during Adam's prior visit should have "put [JPMorgan] on high alert," and that behavior made Adam's later assault of Plaintiff reasonably foreseeable under what he calls "the regular, reasonable foreseeability standard." As we explain below, we do not agree.

### D. Adam's Criminal Conduct Was Not Reasonably Foreseeable When Adam Reentered the Bank

We agree with Plaintiff that even when evidence of prior similar incidents is insufficient to show a defendant's duty to undertake preventative measures, "the foreseeability of the criminal conduct in question . . . remains highly relevant in determining the existence and scope of any duty . . . to warn of dangers or to take appropriate measures to protect patrons or invitees from *ongoing or imminent* criminal conduct." (*Delgado, supra*, 36 Cal.4th at p. 248.) In other words, that JPMorgan owed no duty to prevent future possible criminal conduct is not necessarily dispositive of whether it owed a "duty to respond

9

reasonably to criminal conduct that is imminent or even ongoing in [its] presence." (*Morris*, *supra*, 36 Cal.4th at p. 271, italics omitted; see also *Kentucky Fried Chicken of Cal., Inc. v. Superior Court*, *supra*, 14 Cal.4th at p. 823.) However, the ongoing or imminent criminal conduct at issue must be the sort from which a proprietor or his employees "readily could foresee the immediate danger posed to plaintiff." (*Morris*, *supra*, 36 Cal.4th at pp. 271–272; see *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 156 (*Margaret W.*).)

The trial court concluded that because there had been no similar violent incidents at the bank, "Adam's yelling and shouting did not impose a duty on [JPMorgan]" to warn Plaintiff or protect him from Adam. Plaintiff argues that was error because Adam's behavior amounted to "ongoing criminal conduct." We disagree.

Plaintiff's repeated assertions that Adam's conduct during his first visit to the bank was violent and criminal are unsupported by the record. On the contrary, witness accounts, including Plaintiff's own testimony, indicate Adam was yelling and shouting angrily. The police report does not show any witnesses reported Adam committing a crime during his initial visit to the bank.

Even if Adam did not have the required identification to undertake his desired bank transaction, or said "give me my gun" as he left the bank, that does not amount to a crime. (Cf. *Rinehart v. Boys & Girls Club of Chula Vista* (2005) 133 Cal.App.4th 419, 434 ["[T]he conduct of the rock thrower . . . was clearly criminal, constituting both assaults and a battery. (Pen. Code, §§ 240, 242.)"]; *Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1534 [broken locks on gates and doors

10

allowed vagrants to regularly enter apartment complex grounds, sleep there, and shower in the pool house].) And certainly, there is no evidence any of JPMorgan's employees knew Adam had committed any purported crimes during his first visit to the bank. (See *Margaret W.*, *supra*, 139 Cal.App.4th at pp. 156–158 ["foreseeability must be measured by what the defendant actually knew"].) Nor does Plaintiff argue otherwise.

Because Adam's criminal conduct only began, at the earliest, during his second visit to the bank, it was subsequent to (not ongoing from) the first visit. JPMorgan thus had no duty to protect Plaintiff or warn him about Adam at the time Adam reentered the bank. (See *Margaret W.*, *supra*, 139 Cal.App.4th at pp. 160, 162 [no legal duty to take action to prevent assault when "no criminal assault was occurring or imminent"]; see also *id.* at p. 160, fn. 27 ["It is not enough that the harm be merely conceivable."].)

Plaintiff argues JPMorgan should have either called the police or locked the doors of the bank after Adam left the bank the first time, and that those measures are minimally burdensome. (See *Morris, supra*, 36 Cal.4th at p. 277 ["[P]lacing a 911 call is a well recognized and generally minimally burdensome method of seeking assistance."].) Regardless of the minimal burden, JPMorgan had no duty to undertake those actions before Adam's reentry because at that time, Adam's subsequent criminal conduct was unforeseeable.[4] (See *Margaret W.*, *supra*, 139 Cal.App.4th at p. 160 [no duty to call 911 or take other less

---

[4]    Indeed, Plaintiff testified he had witnessed similar shouting outbursts by unhoused individuals at the bank on previous occasions, but none of those had escalated to violence.

burdensome steps where assault "was [not] sufficiently foreseeable based on what [the defendant] actually knew"].) As a matter of law, JPMorgan had no duty to undertake any of Plaintiff's proposed measures.[5]

## II. The Trial Court Reasonably Denied Plaintiff Leave to Amend His Complaint

Plaintiff argues he should have received leave to amend to add facts to his complaint regarding JPMorgan's knowledge of ongoing harm and its ability to prevent Adam from reentering the bank. We disagree.

While "leave to amend is liberally granted, even when a summary judgment motion is pending," " ' " 'a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading" ' " by clearly stating not only the legal basis for the amendment, but also the factual allegations to sufficiently state a cause of action.' " (*Willemsen v. Mitrosilis* (2014) 230 Cal.App.4th 622, 633, 634.) Moreover, leave to amend is properly denied where a party has delayed seeking leave to amend and makes no showing or excuse for his delay. (*Hughes v. Farmers Ins. Exchange* (2024) 107 Cal.App.5th 73, 87 (*Hughes*).)

Plaintiff did not show he was entitled to leave to amend. First, Plaintiff has offered no explanation or excuse for delaying his request for leave to amend until his opposition to summary judgment. (See *Hughes, supra,* 107 Cal.App.5th at p. 87 ["Hughes failed to offer any excuse for the delay, in the trial court or on appeal"].) Second, adding factual allegations to his complaint

---

[5] Nevertheless, we note a JPMorgan employee called police at least twice before Adam's assault.

would not help Plaintiff overcome his failure to demonstrate a triable issue of fact regarding the unforeseeability of Adam's conduct. In these circumstances, " '[i]t would be patently unfair to allow [Plaintiff] to defeat [the] summary judgment motion by allowing [him] to present a "moving target" unbounded by the pleadings.' " (See *id.* at p. 88, second brackets added.) Leave to amend was properly denied.

## DISPOSITION

The judgment is affirmed. JPMorgan is entitled to costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(1)–(2).)


RICHARDSON, J.

WE CONCUR:


LUI, P. J.


GOORVITCH, J.*

---

*        Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

13