Filed 6/4/20; Certified for Publication 6/24/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KARABETTE HANOUCHIAN, Plaintiff and Appellant, v. TEAGAN STEELE et al., Defendants and Respondents. | B291609 Los Angeles County Super. Ct. No. BC664047 |

APPEAL from a judgment of the Superior Court of Los Angeles County, John Kralik, Judge.  Affirmed.

The Pivtorak Law Firm and David Pivtorak for Plaintiff and Appellant.

The Safarian Firm, Harry A. Safarian, Christina S. Karayan; Greines, Martin, Stein & Richland and Robert A. Olson for Defendants and Respondents Teagan Steele and Lindsay Kusumoto.

Hartsuyker, Stratman & Williams-Abrego, Matthew Saunders; Veatch Carlson and Serena L. Nervez for Defendant and Respondent Reena Villamater.

Daniels, Fine, Israel, Schonbuch & Lebovits, Erin O. Hallissy and Jonathan R. Gerber for Defendant and Respondent Autumn Hooks.

---

## INTRODUCTION

Respondents Teagan Steele, Reena Villamater, Autumn Hooks, and Lindsay Kusumoto are members of the Phi Mu sorority at California State University, Northridge (CSUN). Plaintiff Karabette Hanouchian went to a Phi Mu party that Respondents hosted at their off-campus residence.  He was attacked suddenly, and without provocation, by two other men at the party.  Plaintiff sued Respondents, asserting a claim for negligence based on their alleged failure to follow certain risk management protocols adopted by CSUN and its fraternal organizations pertaining to off-campus events.[1]  The trial court sustained Respondents' demurrers and entered a judgment of dismissal, concluding Respondents did not owe Plaintiff a legal duty to follow the CSUN protocols.  We affirm.

---

[1]     Plaintiff also sued his attackers and the Phi Mu sorority chapter at CSUN.  Those defendants are not parties to this appeal.  Plaintiff also asserted a premises liability claim, which he does not discuss in his appellate briefs.  We consider only the negligence claim in this opinion. (See *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 ["Appellate briefs must provide argument and legal authority for the positions taken.  'When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.' "].)

## FACTS AND PROCEDURAL BACKGROUND

Consistent with the applicable standard of review, we draw our statement of facts from the allegations of plaintiff's operative first amended complaint and other matters properly subject to judicial notice.[2] (*Orange Unified School Dist. v. Rancho Santiago Community College Dist.* (1997) 54 Cal.App.4th 750, 764; *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.) "[W]e treat as true all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law." (*Freeman v. San Diego Assn. of Realtors* (1999) 77 Cal.App.4th 171, 178, fn. 3.)

According to the allegations of the operative first amended complaint, CSUN and its fraternal organizations jointly developed rules and guidelines governing fraternity and sorority events to respond to past incidents of violent physical brawls, assaults, and sexual misconduct at events that had open guest lists, unlimited alcohol, and no security. Those rules require sororities hosting an off-campus event to: register the event with CSUN; submit and receive approval of a guest list; screen people entering the event, including attendees who are visibly intoxicated; limit the amount and type of alcohol provided; provide adequate security arrangements, including spot-checks by university police; and comply with "established risk

---

[2] Plaintiff requested judicial notice of several handbooks from other universities pertaining to fraternal organization social events. The handbooks are not among the types of facts or documents of which we can take judicial notice under the Evidence Code. (See Evid. Code, §§ 452, 459.) The request for judicial notice is denied.

management policies." Specifically, those risk management policies, as set forth in a "New Member Handbook" for CSUN fraternal organizations, prohibit "OPEN PARTIES, meaning those with unrestricted access by nonmembers of the fraternity, without specific invitation, where alcohol is present."

Under CSUN's recruitment, intake, and new member procedures for recognized fraternal organizations, all prospective recruits and potential new members must complete a pre-recruitment education program offered by the school, and all active chapters must "complete an annual educational program that includes but is not limited to: risk management, anti-hazing policies, Title IX requirements, campus resources, and recruitment strategies." The complaint alleges that, as a recognized sorority at CSUN, Phi Mu and its members, including Respondents, were "charged with the responsibility of knowing and following the University Guidelines regarding fraternal organizations."

On June 6, 2015, Phi Mu hosted an "open party" at an off-campus residence "in the possession and control" of Respondents. The complaint alleges the party was a "sorority event," "sanctioned by and held for the benefit of" Phi Mu. It further alleges the party was "thrown in violation of the CSUN fraternal organization guidelines and safety procedures. Specifically, the Party was not registered with the University; [Respondents] did not submit or receive approval of a guest-list for the Party; [Respondents] failed to provide adequate screening for people entering the Party, including individuals who were visibly intoxicated; [Respondents] gave guests, including minors, unlimited access to alcohol; and [Respondents] failed to provide

4

adequate security arrangements and risk management arrangements."

A friend invited Plaintiff to the party. When he arrived, Plaintiff "observed it to be an open party associated with" Phi Mu. He alleges, there "was no one at the door checking ID's or controlling who went in and out of the Property; there was no security present; of the approximately 100 people at the Party, the majority were associated with [Phi Mu]; [and] many people at the party were openly taking or consuming illegal drugs."

Two other men, Greg Cuoco and Tyler Mackay, were also at the party that evening. Mackay and Cuoco had not been invited to the party, but they allegedly "were able to get in because it was an open party." They were "not students at CSUN at the time of the Party."

Plaintiff alleges Mackay and Cuoco were "partying heavily at the event and were looking to start a fight." While Plaintiff was having a conversation with a friend, Mackay "suddenly, and without any provocation," grabbed Plaintiff. Cuoco then "blindsided Plaintiff with a sucker-punch," causing Plaintiff to fall to the ground. While Plaintiff was down, Cuoco "struck Plaintiff with a glass bottle on the left side of his face," puncturing his left eye. After the assault, while Plaintiff was "bleeding profusely," Respondent Kusumoto "approached Plaintiff aggressively and screamed at him to 'Get the f—out of my house!'" Several people then pushed Plaintiff out into the street. A surgeon had to remove Plaintiff's entire iris to save his left eye. He has undergone multiple surgeries and is permanently scarred from the attack.

Plaintiff sued Respondents asserting a claim for negligence. He alleged Respondents were "aware of past violent incidents at

CSUN fraternal organization events" and they "owed statutory, common law, and assumed duties to protect Plaintiff from foreseeable risk of harm resulting from sorority-related events and activities that violated CSUN's fraternal organization safety protocols and risk management procedures." Respondents allegedly breached this duty by "intentionally throwing the Party in direct violation of the rules and guidelines which they themselves established and were required to follow."

Respondents filed separate demurrers, arguing Plaintiff failed to state a legal claim for relief because (1) Respondents did not owe him the legal duty alleged, and (2) Respondents were immune from liability under the social host immunity provision of Civil Code section 1714 for injuries inflicted by Cuoco and Mackay, who were intoxicated at the time of the attack. (See Civ. Code, § 1714, subd. (c) ["Except as provided in subdivision (d), no social host who furnishes alcoholic beverages to any person may be held legally accountable for damages suffered by that person, or for injury to the person or property of, or death of, any third person, resulting from the consumption of those beverages."]; see also, *id.,* subd. (b) ["the furnishing of alcoholic beverages is not the proximate cause of injuries resulting from intoxication, but rather the consumption of alcoholic beverages is the proximate cause of injuries inflicted upon another by an intoxicated person"].)[3]

---

[3] We requested supplemental briefing from the parties to address this defense, which the trial court did not cite as a basis for its ruling. (See *Wheeler v. County of San Bernardino* (1978) 76 Cal.App.3d 841, 846, fn. 3.) In his response, Plaintiff suggested he could allege in good faith that Respondents had not "furnished alcohol to Mackay and Cuoco," as it was possible they

6

The trial court sustained Respondent Steele's demurrer without leave to amend, concluding Steele "did not assume a duty to Plaintiff Hanouchian to prevent the alleged criminal acts of Defendants Mackay and Cuoco." After the court entered an order sustaining Respondent Villamater's demurrer on the same ground, Plaintiff and Respondents entered into a stipulation acknowledging the operative complaint's allegations were "identical and therefore present the same legal questions" as to each Respondent and, thus, judgment should be entered in favor of all Respondents to conserve judicial resources and facilitate an appeal. The trial court entered a judgment for all Respondents in accordance with the stipulation. Plaintiff timely appealed.

## DISCUSSION

### 1.    *Standard of Review*

We review a judgment of dismissal after an order sustaining a demurrer de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.) We "assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.) "We may affirm on any basis stated in the demurrer, regardless of the ground on

---

had "consumed only their own alcohol at the party"; "they only consumed illegal drugs"; "they were already intoxicated when they arrived at the party;" or they were not intoxicated but they were simply "being rowdy and seeking to start a fight." Based on Plaintiff's response, we accept the complaint could be amended so that social host immunity would not apply.

7

which the trial court based its ruling." (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 549; *Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

When the trial court denies leave to amend, "we also must decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Koszdin v. State Comp. Ins. Fund* (2010) 186 Cal.App.4th 480, 487.) "The plaintiff bears the burden of proving there is a reasonable possibility of amendment. [Citation.] . . . [¶] To satisfy that burden on appeal, a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.'" (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) The requisite showing can be made for the first time on appeal. (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746.)

**2.      *Respondents Did Not Owe Plaintiff a Legal Duty to Follow CSUN's Fraternal Organization Safety Protocols to Prevent a Third Party Criminal Attack***

"In general, each person has a duty to act with reasonable care under the circumstances. [Citations.] However, 'one owes no duty to control the conduct of another, nor to warn those endangered by such conduct.' [Citation.] 'A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act.'" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 619.)

"The relationship between a possessor of land and an invitee is a special relationship giving rise to a duty of care." (*University of Southern California v. Superior Court* (2018)

8

30 Cal.App.5th 429, 444 (*USC*); *Peterson v. San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 807 (*Peterson*); see also *Rowland v. Christian* (1968) 69 Cal. 2d 108, 113–119 (*Rowland*).)  "The duty of care includes a duty to take reasonable steps to protect persons on the property from physical harm caused by the foreseeable conduct of third parties," including foreseeable criminal acts.  (*USC*, at p. 444; *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213 (*Castaneda*); *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 235 (*Delgado*); *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 (*Ann M.*).)

"[T]he existence and scope of a property owner's duty to protect against third party crime is a question of law for the court to resolve." (*Castaneda, supra,* 41 Cal.4th at p. 1213; *Delgado, supra,* 36 Cal.4th at pp. 237–238; *Ann M., supra,* 6 Cal.4th at pp. 674, 678–679.)  In determining a duty's existence and scope, we consider several factors:  " '[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' " (*Ann M.,* at p. 675, fn. 5, quoting *Rowland, supra,* 69 Cal.2d at p. 113; *Castaneda,* at p. 1213.)  "Foreseeability and the extent of the burden to the defendant are ordinarily the crucial considerations, but in a given case one or more of the other *Rowland* factors may be determinative of the duty analysis." (*Castaneda,* at p. 1213;

*Delgado*, at p. 237, fn. 15; *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1189–1190, fn. 2 (*Sharon P.*).)

With respect to the two most crucial considerations, our Supreme Court has instructed that " 'the scope of the duty is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed. [Citation.] " '[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required.' " ' " (*Castaneda, supra,* 41 Cal.4th at p. 1213, quoting *Ann M., supra,* 6 Cal.4th at pp. 678–679.) The high court has described this analysis as a "sliding-scale balancing formula." (*Delgado, supra,* 36 Cal.4th at p. 243; *Castaneda,* at pp. 1213-1214.)

The prescribed duty analysis "requires the court in each case (whether trial or appellate) to identify the specific action or actions the plaintiff claims the defendant had a duty to undertake. 'Only after the scope of the duty under consideration is defined may a court meaningfully undertake the balancing analysis of the risks and burdens present in a given case to determine whether the specific obligations should or should not be imposed on the landlord.' " (*Castaneda, supra,* 41 Cal.4th at p. 1214.) " 'First, the court must determine the specific measures the plaintiff asserts the defendant should have taken to prevent the harm. This frames the issue for the court's determination by defining the scope of the duty under consideration. Second, the court must analyze how financially and socially burdensome these proposed measures would be to a landlord, which measures could range from minimally burdensome to significantly

10

burdensome under the facts of the case. Third, the court must identify the nature of the third party conduct that the plaintiff claims could have been prevented had the landlord taken the proposed measures, and assess how foreseeable (on a continuum from a mere possibility to a reasonable probability) it was that this conduct would occur. Once the burden and foreseeability have been independently assessed, they can be compared in determining the scope of the duty the court imposes on a given defendant. The more certain the likelihood of harm, the higher the burden a court will impose on a landlord to prevent it; the less foreseeable the harm, the lower the burden a court will place on a landlord.' " (*Ibid.*) "[O]ther *Rowland* factors may come into play in a given case, but the balance of burdens and foreseeability is generally primary to the analysis." (*Ibid.*)

Consistent with the prescribed analysis, we begin by identifying the specific actions Plaintiff claims Respondents were obliged to take to protect him from being assaulted. (See *Castaneda, supra,* 41 Cal.4th at p. 1215.) The operative complaint alleges Respondents "owed statutory, common law, and assumed duties to protect Plaintiff from foreseeable risk of harm resulting from sorority-related events and activities that violated CSUN's fraternal organization safety protocols and risk management procedures." Specifically, the complaint asserts Respondents owed Plaintiff a *legal* duty to: register the event with CSUN; submit and receive approval of a guest list; screen people entering the event, including attendees who are visibly intoxicated; limit the amount and type of alcohol provided; provide adequate security arrangements, including spot-checks by university police; and comply with "established risk management policies."

11

Here, at least three of the specific actions that Plaintiff proposes—employing private security, permitting checks by university police, and vetting attendees—are highly burdensome measures that require a heightened degree of foreseeability to impose under the prescribed sliding-scale balancing formula. (See *Delgado, supra,* 36 Cal.4th at p. 244 ["To the extent plaintiff's special-relationship-based claim rests upon an assertion that defendant was legally required to provide a guard or guards or to undertake any similarly burdensome measures, . . . plaintiff was required to demonstrate heightened foreseeability in the form of prior similar criminal incidents."]; see also *Castaneda, supra,* 41 Cal.4th at pp. 1216–1218 [absent "extraordinary foreseeability," landlord did not owe legal duty to existing tenants to screen and conduct criminal background checks on applicant who "looks, dresses or talks like a gang member"].)

As our Supreme Court explained in *Ann M.*, "[w]hile there may be circumstances where the hiring of security guards will be required to satisfy a landowner's duty of care, such action will rarely, if ever, be found to be a 'minimal burden.' " (*Ann M., supra,* 6 Cal.4th at p. 679.) "The monetary costs of security guards is not insignificant. Moreover, the obligation to provide patrols adequate to deter criminal conduct is not well defined. 'No one really knows why people commit crime, hence no one really knows what is "adequate" deterrence in any given situation.' [Citation.] Finally, the social costs of imposing a duty on landowners to hire private police forces are also not insignificant. [Citation.] For these reasons, . . . a *high degree of foreseeability* is required in order to find that the scope of a landlord's duty of care includes the hiring of security guards."

(*Ibid.*, italics added; see also *Sharon P., supra,* 21 Cal.4th at p. 1191 ["a high degree of foreseeability" is required to "justify imposition of . . . an obligation . . . to provide security guards in their garage"].)

Similarly, in *Melton v. Boustred* (2010) 183 Cal.App.4th 521 (*Melton*), the reviewing court held a party host's alleged duty to "limit[ ] the guest list," as a measure to prevent a third party criminal assault on other party attendees, was "objectionable on several grounds, including vagueness, lack of efficacy, and burdensomeness in terms of social cost." (*Id.* at p. 540.) The defendant in *Melton* posted an open invitation on his social networking site for a party at his residence featuring live music and alcoholic beverages. (*Id.* at p. 527.) Upon arriving at the party, the plaintiffs were attacked, beaten, and stabbed by a group of unknown individuals. (*Ibid.*) The plaintiffs argued the " 'methods available to the defendant to limit the scope of the invitation were neither burdensome nor expensive,' " citing a feature on the social media site that would have allowed the defendant "to limit invitations to 'friends' only." (*Id.* at pp. 539– 540.) The *Melton* court rejected the argument, reasoning that the measure represented a "weighty social burden" as it would have effectively limited the defendant from " 'networking . . . both socially and professionally," as he had a right to do in his own residence. (*Id.* at p. 540.) Coupled with the doubtful efficacy of the measure to screen party attendees who might commit criminal assaults, the *Melton* court concluded a heightened degree of foreseeability was required to impose the measure as a legal duty on the defendant. (*Id.* at pp. 540–541, citing *Castaneda, supra,* 41 Cal.4th at p. 1217 [" 'proposed screening' "

13

of housing applicants' criminal records was not " 'likely to be especially effective' " in identifying gang affiliation].)

Critically, here, the special relationship upon which Plaintiff premises Respondents' alleged duty is the recognized relationship between a possessor of land and a person who enters upon the property. (See, e.g., *Peterson, supra,* 36 Cal.3d at p. 807.) While the alleged training that Respondents received as members of their sorority may have some bearing on the foreseeability of this alleged attack, there is no recognized special relationship between sorority members and party-goers that would permit the imposition of a greater or more burdensome duty upon Respondents *merely because of their sorority membership* than could be imposed upon another landowner who received similar training. (See *id.* at p. 806 [listing "recognized special relationships"].)

Nor does the alleged fact that Respondents' sorority agreed to CSUN's fraternal organization guidelines diminish the burdensomeness of the specific actions that Plaintiff claims Respondents were obliged to take. While Respondents were certainly free to agree to CSUN's protocols, and could be subject to disciplinary action by CSUN for violation of its guidelines, their agreement to be bound by the guidelines is not a basis to impose a greater *legal* duty upon Respondents than our statutory or common law permits. (See *Fireman's Fund Ins. Co. v. Security Pacific Nat'l Bank* (1978) 85 Cal.App.3d 797, 829 ["While in some situations violation of a company rule may be used as evidence of breach of duty, it *cannot* be used to *establish* the existence of such a duty when contrary to both statutory and common law."]; accord, *Minch v. Department of California Highway Patrol* (2006) 140 Cal.App.4th 895, 908 ["The provisions of the [CHP] manual

14

would be admissible evidence on the question of breach of duty but do not substitute for judicial determination whether a duty was owed."].)  Indeed, because the proposed imposition of a legal duty to allow " 'spot-checks' by University Police" and to "receive approval of a guest-list" implicates the waiver of constitutionally protected rights, it necessarily constitutes a heavy burden requiring heightened foreseeability.  (See U.S. Const., 1st Amend. [no law shall abridge the right to peaceably assemble]; *id.*, 4th Amend. [no unreasonable search without probable cause]; *Delgado, supra,* 36 Cal.4th at pp. 243–244.)

Plaintiff contends he has alleged sufficient facts to prove the third party criminal attack he suffered was highly foreseeable and thus justified the burdensome measures he proposes.  He points to the operative complaint's allegations that "CSUN fraternal organization events and activities that involved no security, open guest-lists, and unlimited alcohol had a history of violent conduct," and that "in response to these violent incidents CSUN fraternal organizations and, by association—their members—established certain rules and guidelines governing their events and activities," as proof that Respondents' failure to follow the guidelines made the attack highly foreseeable. The allegations are insufficient to establish the high degree of foreseeability required to impose the burdensome legal duty that Plaintiff proposes.

To establish heightened foreseeability for third party criminal conduct, our authorities have consistently required *actual* knowledge—not constructive, inferential, or knowledge by association—to impose a burdensome legal duty.  In *Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138 (*Wiener*), our Supreme Court explained why more than a general

15

prospect of danger is required "before we can hold a defendant liable for the criminal acts of third parties." (*Id.* at pp. 1149–1150, citing with approval *Robison v. Six Flags Theme Parks Inc.* (1998) 64 Cal.App.4th 1294, 1301.) There, the defendant operated a child care center on the corner of a busy street, with a playground enclosed by a four-foot-high chain link fence. (*Wiener*, at pp. 1142–1143.) A man intentionally drove his vehicle into the playground killing two children and injuring others. (*Id.* at p. 1143.) The parents of the deceased and injured children sued the defendant, claiming the need for a sturdier fence was foreseeable because, several years earlier, a mail truck had accidently crashed through the fence and into the playground. (*Ibid.*)

The *Wiener* court rejected the argument, reasoning a prior negligent encroachment did not make a deliberate criminal act highly foreseeable. The Supreme Court explained: "[F]irst, it is difficult if not impossible in today's society to predict when a criminal might strike. Also, if a criminal decides on a particular goal or victim, it is extremely difficult to remove his every means for achieving that goal." (*Wiener, supra,* 32 Cal.4th at p. 1150.) Thus, the court held: "Without prior similar criminal acts, or even any indication of prior criminal acts or intrusions of any type in the surrounding businesses, defendants here could not have been expected to create a fortress to protect the children, or to take further steps to deter or hinder a vicious murderer, unconcerned about the safety of innocent children, from committing his crime." (*Id.* at p. 1151.)

In *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141 (*Margaret W.*), the reviewing court extended this logic to hold "foreseeability must be measured by what the defendant *actually*

16

knew" before the defendant could be charged with a duty to prevent a third party criminal act. (*Id.* at p. 156, italics added.) In rejecting the claim that the defendant had a duty to retrieve her teenage daughter's sleepover guest, after the guest left the defendant's home with some boys and was sexually assaulted, the *Margaret W.* court explained: "None of these cases [*Wiener*, *Delgado*, or *Morris v. De La Torre* (2005) 36 Cal.4th 260 (*Morris*)] has held that a defendant owed a duty to take steps to prevent or respond to third party crime on the basis of *constructive knowledge* or information the defendant *should have known.*" (*Ibid.*, italics added.)[4] Because the defendant did not actually know that her daughter's guest "had left with boys" or that the boys "had any propensity to commit sexual assaults," it was not highly foreseeable that such an assault would occur without her intervention. (*Id.* at p. 158; see also *Romero v. Superior Court* (2001) 89 Cal.App.4th 1068, 1089 ["To impose on an adult a duty to supervise and protect a female teenage invitee against sexual misconduct by a male teenage invitee, it is not enough to assert that it is *conceivable* the latter might engage in sexual misconduct during a brief absence of adult supervision."].)

The reviewing court reached the same conclusion in *Williams v. Fremont Corners, Inc.* (2019) 37 Cal.App.5th 654 (*Williams*). There, a musician left a bar after performing and was assaulted in the parking lot. The evidence showed there were three prior incidents where police had requested the bar's

---

[4] In *Morris*, our Supreme Court held the defendant restaurant had a duty to reasonably respond to an attack its employees watched unfolding in their presence, including the "minimally burdensome" measure of calling 911. (*Morris, supra,* 36 Cal.4th at pp. 277–278.)

surveillance video of the area, twice relating to altercations and once for a burglary.  (*Id.* at pp. 660, 666–667.)  The *Williams* court concluded this evidence was insufficient to establish heightened foreseeability:  "[T]he evidence above demonstrates that [the defendant] was generally aware of the possibility of fights erupting at or near the bar.  But a general knowledge of the *possibility* of violent criminal conduct is not in itself enough to create a duty under California law."  (*Id.* at p. 668, citing *Sharon P., supra,* 21 Cal.4th at pp. 1185–1186 [evidence defendant knew about armed robberies on building's ground floor did not make sexual assault at gunpoint in parking garage sufficiently foreseeable to impose duty to provide security guards].)

Here, Plaintiff alleges the criminal attack he suffered happened "suddenly, and without any provocation."  While he alleges Respondents were "aware of past violent incidents at CSUN fraternal organization events" generally, he does not allege Respondents were aware of prior similar incidents at a Phi Mu sorority party specifically, let alone that Respondents had actual knowledge of Mackay's or Cuoco's violent propensities that would have warranted the men's exclusion from the party. (See *Margaret W., supra,* 139 Cal.App.4th at p. 155 [" 'heightened foreseeability' " requires "knowledge of the perpetrator's propensity to assault or knowledge of prior similar incidents in that location"]; *Delgado, supra,* 36 Cal.4th at p. 240.)  Nor does he allege Respondents were aware of an imminent attack, or that they knew his would-be assailants had been "partying heavily at the event and were looking to start a fight," as he alleges. (Cf. *Morris, supra,* 36 Cal.4th at p. 271 [the obligation to prevent possible future criminal conduct requires a higher degree of

18

foreseeability than one's obligation "to *respond* reasonably to criminal conduct that is *imminent* or even *ongoing* in his or her presence"].)

Respondents' alleged knowledge of prior incidents at other fraternity parties establishes only "general knowledge of the *possibility* of violent criminal conduct" (*Williams, supra,* 37 Cal.App.5th at p. 668); it does not suffice to make it highly foreseeable that a criminal assault would occur at Respondents' party. (Cf. *USC, supra,* 30 Cal.App.5th at pp. 452–455 [recognizing the "*possibility* of injury at such a party unrestrained by sensible rules and enforcement is *reasonably* foreseeable," but concluding foreseeability was insufficient to impose legal duty on university to break up fraternity party (italics added)].) This sort of "constructive knowledge" or imputation of foreseeability by "common sense" is not sufficient to impose, as a *legal duty*, the burdensome measures Plaintiff proposes. (See *Margaret W., supra,* 139 Cal.App.4th at p. 156 [constructive knowledge insufficient]; *Melton, supra,* 183 Cal.App.4th at p. 538 [rejecting claim that foreseeability of criminal assault was established by "common sense . . . that a public invitation posted on [social media] to a free party offering music and alcohol was substantially certain to result in an injury to someone"].)

Because Plaintiff cannot allege sufficient facts to establish the high degree of foreseeability necessary to charge Respondents with a legal duty to take highly burdensome measures to prevent the type of sudden and unprovoked third party criminal attack that allegedly occurred here, we need not consider the other *Rowland* factors. (See *Delgado, supra,* 36 Cal.4th at p. 237, fn. 15 [" '[t]he most important of [*Rowland* factors] in establishing duty

19

is foreseeability,' " however, the " 'other factors may dictate *against* expanding the scope of a landowner's duty to include protecting against third party crime, even where there is sufficient evidence of foreseeability' " (italics added)].)

3.      ***Respondents' Agreement to CSUN's Fraternal Organization Safety Protocols Does Not Support a Negligent Undertaking Claim***

Plaintiff contends Respondents' "failure to abide by their own safety rules constitutes a negligent undertaking."  The negligent undertaking doctrine is inapplicable to the alleged facts of this case.

"The foundational requirement for liability under a negligent undertaking theory is the undertaking of a task that the defendant allegedly performed negligently."  (*USC, supra,* 30 Cal.App.5th at p. 448, citing *Paz v. State of California* (2000) 22 Cal.4th 550, 559.)  The undertaking must be to render services that the defendant should recognize as necessary for the plaintiff's protection.  (*USC*, at p. 448, citing *Paz*, at pp. 559–560; *Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 618.)  "In addition to satisfying these requirements, the plaintiff also must satisfy one of two conditions: either (a) the defendant's failure to exercise reasonable care increased the risk of harm to the plaintiff, or (b) the plaintiff reasonably relied on the undertaking and suffered injury as a result."  (*USC,* at pp. 448–449, citing *Delgado, supra,* 36 Cal.4th at p. 249; *Williams v. State of California* (1983) 34 Cal.3d 18, 23; cf. *Paz,* at p. 560 [assuming the defendant undertook to provide protective services, summary judgment was proper because the plaintiff could not establish any of the conditions for liability].)  "Whether the defendant's

20

undertaking, if proven, gave rise to a duty of care is a question of law for the court to decide." (*USC,* at p. 449.)

In *USC*, a party attendee sued a university after she was pushed from a makeshift platform and was injured at an off-campus fraternity party where alcohol was served. (*USC, supra,* 30 Cal.App.5th at pp. 436–437.) The plaintiff maintained the university, "by adopting policies regarding alcohol use and social events and providing a security patrol both on and off campus," had assumed a duty to protect party attendees from third party conduct at fraternity parties. (*Id.* at p. 449.) The *USC* court disagreed. First, the court concluded the university's undertaking did not increase the risk of harm: "By establishing policies governing fraternities, providing a security patrol with authority to enforce those policies both on and off campus, and failing to enforce those policies by shutting down the [fraternity] party after it began or preventing the party from occurring in the first place, [the university] did not create any new peril." (*Id.* at p. 450.)

Second, the *USC* court determined the plaintiff could not show she "actually or reasonably relied" upon the alleged safety policies: "Despite her deposition testimony that she relied on [the university's public safety department] to protect her, there is no indication that her awareness of the existence of [the public safety department] caused her to behave any differently. [Citation.] The evidence also does not support her claim that any reliance was reasonable. [The plaintiff] acknowledged that the party was 'very large, very crazy, packed and crowded,' and there was no visible security or control. Alcohol was plentiful. . . . [The plaintiff] stepped onto a makeshift raised platform to dance with her friends amid other partygoers and was bumped off

21

the platform and fell to the ground. In these circumstances, any reliance on [the university] or [its public safety department] to protect her from harm was unreasonable." (*USC, supra,* 30 Cal.App.5th at pp. 450–451, fn. omitted.)

The same reasoning applies to the alleged facts in this case. Just as the university in *USC* did not increase the risk of harm by failing to enforce policies that required it to shut down the fraternity party, so too Respondents did not increase the risk of harm to Plaintiff by throwing an open party in violation of the safety protocols their sorority had agreed to with CSUN. (See *USC, supra,* 30 Cal.App.5th at p. 450; see also *City of Santee v. County of San Diego* (1989) 211 Cal.App.3d 1006, 1015–1016 [The "increased risk" element of the negligent undertaking doctrine is not satisfied where the defendant merely "fail[ed] to eliminate a preexisting risk."].)

Nor can Plaintiff prove he actually and reasonably relied upon CSUN's safety protocols. The operative complaint alleges, on information and belief, that the protocols required, among other things, security, a guest list, and limits on alcohol. But Plaintiff admits that, upon entering the party, he "observed" there was no guest list or anyone checking identification (in fact, *he* was an uninvited attendee); there was "no security present"; and "many people at the party were openly taking or consuming illegal drugs." Even if Plaintiff could allege he knew about the safety protocols at the time he attended the party (which he does not), he cannot possibly prove based on these facts that he reasonably relied upon the protocols to protect him. (See *USC, supra,* 30 Cal.App.5th at pp. 450–451.)

22

## DISPOSITION

The judgment is affirmed.  Respondents Teagan Steele, Reena Villamater, Autumn Hooks, and Lindsay Kusumoto are entitled to their costs.


EGERTON, J.

We concur:


EDMON, P.J.


DHANIDINA, J.

Filed 6/24/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KARABETTE HANOUCHIAN, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> TEAGAN STEELE et al., <br><br> Defendants and Respondents. | B291609 <br><br> Los Angeles County <br> Super. Ct. No. BC664047 <br><br> ORDER CERTIFYING <br> FOR PUBLICATION <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter, filed on June 4, 2020, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports.

There is no change in the judgment.

_____

EGERTON, J.          EDMON, P. J.          DHANIDINA, J.