Filed 9/28/23  Bird v. Great American Chicken Corp. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| PAMELA BIRD,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>GREAT AMERICAN CHICKEN CORPORATION,<br><br>    Defendant and Respondent. | B320644<br><br>(Los Angeles County Super. Ct. No. 20AVCV00506) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County, Stephen T. Morgan, Judge.  Affirmed.

Law Offices of Akudinobi & Ikonte, Emmanuel C. Akudinobi, and Chijioke O. Ikonte for Plaintiff and Appellant.

Robinson Di Lando, Michael A. Di Lando, and Tobias Mark Kane for Defendant and Respondent.

* * * * * *

A woman in a fast food restaurant started yelling and eventually punched a fellow customer in the face. The customer sued the fast food restaurant for negligently maintaining its property because the restaurant (1) did not hire security guards or use intensive, two-way security monitoring, and (2) did not call 911 soon enough when the woman started yelling at the customer. The trial court granted summary judgment for the restaurant. Because this was proper and because the customer's subsequent motion for reconsideration was not well taken, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts[1]

On September 1, 2018, Pamela Bird (Bird) went to a Kentucky Fried Chicken restaurant in Lancaster, California (the KFC) with her sister and an acquaintance to have lunch and convene a Bible study group.

The group was at the KFC for about 30 minutes when a woman they perceived to be "homeless" came inside the restaurant with an empty KFC cup and was denied service at the register. As the woman sat down in a booth across the restaurant from Bird and started "screaming and . . . cursing" to

_____

[1]     Consistent with the standard governing our review of summary judgments, we construe the record in the light most favorable to the nonmoving party and resolve all doubts concerning the evidence in favor of that party. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286 (*Hartford*).) Thus, the deposition testimony of the restaurant employees here providing a different account of the incident at issue—namely, that no physical altercation occurred *at all*—are irrelevant for purposes of our analysis.

herself, Bird and her group continued their Bible study session. After about 10 minutes, the woman threw cigarette lighters at Bird and her group, "rush[ed]" toward them, and "scream[ed] and yell[ed]" that they "[s]top talking about [her]" or she would "demonize" them. Bird and her group tried to calm the woman down, and Bird implored the KFC employees to call the police. Just when Bird believed the woman had decided to "bag[] up" and leave, the woman "out of the blue" punched Bird in the left side of her jaw. Bird responded by hitting the woman with a tablet, and the group then surrounded the woman. The woman retreated, the group helped her pick up the cigarette lighters, and she left the KFC—but not without taking Bird's Bible on her way out.

The manager of the KFC location called law enforcement after Bird was punched, and deputies from the Los Angeles County Sheriff's Department responded to the scene 42 minutes later.

Other than this occurrence, the KFC had no internal record of any reported incidents of violence against a customer. It also had no knowledge of similarly violent incidents that may have occurred in the surrounding area of Lancaster.

## II. Procedural Background

### A. *Complaint*

In July 2020, Bird filed a form complaint against Great American Chicken Corporation (defendant), which was the owner and operator of the Lancaster KFC franchise location where the incident occurred. Bird asserted a single cause of action for premises liability. More specifically, Bird alleged that defendant was liable because it (1) "failed to provide security to protect its visitors," and (2) failed to take "any steps to protect visitors despite harassment . . . by patrons inside the restaurant."

3

## B.   *Motion for summary judgment*

Defendant moved for summary judgment on the grounds that (1) it owed Bird no duty to (a) provide security guards, or (b) respond to the incident, and (2) even if it had a duty to respond, any breach of that duty did not cause Bird's injuries. After further briefing that included an unauthorized sur-reply filed by Bird, evidentiary objections filed by defendant, and a hearing, the trial court granted the motion for summary judgment in a statement of decision issued January 21, 2022.

In its order granting summary judgment, the court first ruled that defendant owed no duty to take preventative measures because Bird's injury was not foreseeable under the "heightened" foreseeability standard applicable when assessing whether landowners owe a duty to hire security guards. Although Bird had offered two exhibits to show that similar incidents had occurred at the KFC location, the trial court ruled that those exhibits—and an expert witness declaration repeating the content of those exhibits and offering an opinion based on that content regarding what measures defendant should have taken—were inadmissible. The court sidestepped defendant's argument that it owed no duty to respond to Bird's injuries by calling 911 by instead holding that any breach of that duty did not cause Bird's injuries in light of the undisputed fact that law enforcement would not have arrived in time to halt the battery, even if the KFC employees had called sooner.

## C.   *Motion for reconsideration*

Seventeen days after the trial court issued its order granting summary judgment, Bird filed a motion for reconsideration. The motion advanced two grounds: (1) Bird had "inadvertently omitted" a few pages from the deposition of

4

defendant's director of human resources, and (2) Bird's expert witness sought to change his declaration to replace his initial opinion regarding the likelihood that certain measures would have prevented the battery on Bird. After a full round of briefing and a hearing, the trial court issued an order on March 10, 2022, denying the motion.

### D. *Appeal*

Following entry of judgment for defendant, Bird filed this timely appeal.

## DISCUSSION

Bird argues that the trial court erred in entering summary judgment for defendant and in denying her motion for reconsideration of the summary judgment order.

## I. Motion for Summary Judgment

### A. *Applicable law*

#### 1. *Law governing summary judgment motions*

"A defendant is entitled to summary judgment if it can 'show that there is no triable issue as to any material fact.' (Code Civ. Proc., § 437c, subd. (c).) The defendant bears the initial burden of establishing that the plaintiff's cause of action has 'no merit' by showing that the plaintiff cannot establish '[o]ne or more elements of [her] cause of action.' (*Id.*, subds. (o) & (p)(2).) If this burden is met, the 'burden shifts' to the plaintiff 'to show that a triable issue of one or more material facts exists as to that cause of action . . . .' (*Id.*, subd. (p)(2); see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [citation].)" (*Issakhani v. Shadow Glen Homeowners Assn., Inc.* (2021) 63 Cal.App.5th 917, 924 (*Issakhani*).) We review the trial court's grant of summary judgment de novo, considering all the evidence set forth in the moving and opposing papers except that to which evidentiary

5

objections were sustained and not challenged on appeal, and construing the evidence in the light most favorable to the party opposing summary judgment.  (*Hartford*, *supra*, 59 Cal.4th at p. 286; *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534-535 (*Reid*).)  To the extent our review turns on challenges to the evidentiary rulings the trial court made in connection with the summary judgment motion, the weight of authority dictates that we review those rulings for an abuse of discretion.  (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 852; *Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694; *Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169; but see *Reid*, at p. 535 [leaving open question as to whether evidentiary rulings reviewed de novo or for abuse of discretion].)  The party challenging the evidentiary rulings bears the burden of showing they were erroneous.  (*Mackey v. Trustees of California State University* (2019) 31 Cal.App.5th 640, 657.)

        2.     *Law governing premises liability for third-party misconduct*

To establish a cause of action for premises liability based on negligence, the plaintiff must show that the defendant owed her a legal duty, that the defendant breached that duty, and that the breach was a proximate cause of the plaintiff's injuries.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 (*Saelzler*); *Issakhani*, *supra*, 63 Cal.App.5th at p. 924.)  The existence and scope of a duty is a question of law.  (*Issakhani*, at p. 924; *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 (*Sharon P.*), disapproved on another ground in *Reid*, *supra*, 50 Cal.4th at p. 527, fn. 5; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 674 (*Ann M.*), disapproved on another ground in *Reid*, at p. 527, fn. 5; *Delgado v. Trax Bar & Grill* (2005) 36

6

Cal.4th 224, 237-238 (*Delgado*); *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213 (*Castaneda*).) Although the question of whether the breach of a duty has caused the plaintiff's injury is typically one for the jury, the court may resolve it on summary judgment where reasonable minds could not differ on the absence of causation. (*Lopez v. McDonald's Corp.* (1987) 193 Cal.App.3d 495, 513 (*Lopez*); *Barber v. Southern Cal. Edison Co.* (2022) 80 Cal.App.5th 227, 246 (*Barber*).)

Although every person owes a duty of care to all others who are foreseeably endangered by the person's *own* negligent conduct (Civ. Code, § 1714, subd. (a); *Delgado*, *supra*, 36 Cal.4th at pp. 234-235), as a general matter, a person owes no duty to protect others from the conduct—including criminal conduct—of *third parties* (*Delgado*, at pp. 235, 237). However, it is undisputed in this case that a "special relationship" runs between a restaurant and its patrons, and that this special relationship can impose a duty upon a restaurant—as an entity in control over the premises—to protect its patrons from the criminal conduct of third parties on or near those premises. (*Morris v. De La Torre* (2005) 36 Cal.4th 260, 269 (*Morris*); *Delgado*, at p. 235; *Kentucky Fried Chicken of Cal., Inc. v. Superior Court* (1997) 14 Cal.4th 814, 823 (*Kentucky Fried Chicken*); *Lopez*, *supra*, 193 Cal.App.3d at pp. 504, 506.)

More specifically, courts have identified two potential duties restaurants owe their patrons—namely, (1) a duty to *prevent* their patrons from being harmed by a third party's criminal conduct (*Ann M.*, *supra*, 6 Cal.4th at p. 674 ["duty to take reasonable steps" including "precautionary measures"]), and (2) a duty to provide aid or assistance to their patrons *in response* to a third party's criminal conduct once that conduct is imminent

7

or is ongoing (*Delgado*, *supra*, 36 Cal.4th at p. 241 ["duty to undertake relatively simple measures such as providing 'assistance [to] their customers'"]).  Because "random, violent crime" is unfortunately "endemic in today's society," and because actions to prevent criminal activity on a restaurant's premises—such as the hiring of security guards—are typically very expensive and impose a "[]significant" burden on the restaurant, a restaurant's duty to prevent criminal conduct (the first duty noted above) only exists when the restaurant is aware that "similar incidents of violent crime" have occurred *on its premises*.[2]  (*Ann M.*, at pp. 678, 679 & fn. 7; *Sharon P.*, *supra*, 21 Cal.4th at pp. 1190-1191; *Verdugo v. Target Corp.* (2014) 59 Cal.4th 312, 338-339.)  Because providing responsive aid or assistance to patrons imposes a more "minimal" burden, a restaurant's duty to provide responsive aid (such as by calling 911 or the police) exists—like most tort duties—as long as injury from its failure to do so is reasonably foreseeable  (*Delgado*, *supra*, 36 Cal.4th at p. 241; *Morris*, *supra*, 36 Cal.4th at pp. 270, 276-278; *Kentucky Fried Chicken*, *supra*, 14 Cal.4th at p. 823 [restaurant has duty to respond to ongoing conduct by taking "such appropriate action as is reasonable under the circumstances to protect patrons"]; see *Weirum v. RKO General, Inc.* (1975) 15 Cal.3d 40, 49 ["nonfeasance is found when the defendant has failed to aid plaintiff through beneficial

---

**2**     *Ann M.* also noted the "possibility" that similar incidents occurring on the premises of "substantially similar business establishment[s]" in the "immediate proximity" of the defendant-premises owner may also satisfy the heightened foreseeability requirement (*Ann M.*, *supra*, 6 Cal.4th at p. 679, fn. 7), but did not reach the issue because no such evidence was present.  The same is true here.

intervention"]); the "heightened" degree of foreseeability that triggers the duty *to prevent* is not required for the duty *to respond* (*Delgado*, at pp. 241, 243).

>   **B.    *Analysis***

>>     1.    *Absence of preventative measures*

We independently agree with the trial court that defendant did not owe Bird a duty to *prevent* crime by hiring security guards or implementing an interactive video monitoring system. As noted above, "the burden of hiring security guards"—when considering the monetary costs, social costs, and minimal deterrent effect—is "extremely high." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1147 (*Wiener*); *Ann M.*, *supra*, 6 Cal.4th at p. 679; *Sharon P.*, *supra*, 21 Cal.4th at pp. 1192, 1199; *Delgado*, *supra*, 36 Cal.4th at pp. 239-240.) And contrary to what Bird asserts, the burden of installing—and, more to the point, staffing—a two-way video monitoring system is equally if not more onerous because the only way such a system is interactive enough to allow for the monitor to "voice down" at persons in the restaurant is if it is staffed whenever the restaurant is open. As noted above, a duty to prevent crime by implementing such burdensome measures exists only if the restaurant is aware of "prior similar incidents" of criminal conduct *at that restaurant*. (*Wiener*, at p. 1147; *Ann M.*, at p. 679; *Sharon P.*, at p. 1199; *Delgado*, at pp. 239-240.) But it is undisputed that defendant had no records—and hence no knowledge—of similar incidents of battery on its patrons in the past. This undisputed fact means defendant owed Bird no duty to employ security guards or to install an interactive monitoring system, and means Bird's premises liability claim fails as a matter of law. (*Ann M.*, at pp. 679-680 [no duty to employ

9

security guards where shopping plaza had no records of prior violent acts on premises]; *Melton v. Boustred* (2010) 183 Cal.App.4th 521, 539 [heightened standard of foreseeability "not met" where there was an "absence of prior similar incidents" of stabbings at parties]; *Margaret W. v. Kelley R.* (2006) 139 Cal.App.4th 141, 156 ["foreseeability must be measured by what the defendant actually knew"].) That the KFC was not located in a wealthy neighborhood, as Bird suggests, does not mean defendant knew a battery against a customer would occur. (*Lopez*, *supra*, 193 Cal.App.3d at p. 511 ["a fast-food restaurant does not create 'an especial temptation and opportunity for criminal misconduct'"]; *Williams v. Fremont Corners, Inc.* (2019) 37 Cal.App.5th 654, 668 (*Williams*) ["a general knowledge of the *possibility* of violent criminal conduct is not in itself enough to create a duty under California law"].)

Bird responds with what boils down to three arguments.

First, she argues that she presented two exhibits constituting evidence of prior similar incidents occurring at the Lancaster KFC, but the trial court erroneously excluded that evidence. If those exhibits were admitted, Bird continues, triable issues of fact would preclude summary judgment.

The first of the two exhibits are Sheriff's Department dispatch logs memorializing calls asking for law enforcement intervention at the KFC location. Those logs show 41 calls over a more than five-year period preceding the incident involving Bird. The trial court properly excluded the logs as inadmissible hearsay. The logs reflect two layers of out-of-court statements admitted for their truth: (1) what the caller told the dispatcher, and (2) what the dispatcher recorded in the dispatch logs. The public records exception to the hearsay rule applies to the second

10

layer (Evid. Code, § 1280; *Murphey v. Shiomoto* (2017) 13 Cal.App.5th 1052, 1064-1065; *People v. Baeske* (1976) 58 Cal.App.3d 775, 780), but Bird did not carry her burden as the proponent of the evidence because she offered no exception to the hearsay rule for admitting the first layer (Evid. Code, §§ 1200, subd. (b), 1201, 702, subd. (a); *People v. Reed* (1996) 13 Cal.4th 217, 224-225 ["As with all multiple hearsay, the question is whether each hearsay statement fell within an exception to the hearsay rule"]). For the same reason, the trial court properly excluded the portions of the expert's declaration repeating and analyzing the information in the dispatch logs. Although, as Bird notes, an expert may *rely* on inadmissible evidence in reaching their opinions (Evid. Code, § 801, subd. (b)), experts may not *relay* case-specific facts when explaining the basis for the opinion unless those facts are covered by a hearsay exception (Evid. Code, § 802; *People v. Sanchez* (2016) 63 Cal.4th 665, 684, 686). In other words, and contrary to what Bird seems to suggest, the fact that her expert relied on inadmissible evidence in forming an opinion does not somehow make that evidence admissible.

What is more, even if we assume for purposes of argument that the dispatch logs should have been admitted (because the callers' statements to the dispatchers may qualify as excited utterances (Evid. Code, § 1240)), admission of those logs does not create a triable issue of fact as to whether defendant knew that prior similar incidents occurred at the Lancaster KFC. Most of the 41 calls did not report violence at all; of the violent incidents, most involved disgruntled patrons acting aggressively toward employees (who can be trained and protected in different ways than patrons). By Bird's own count, there was only one similar incident—an altercation in which a patron threw a bucket of

11

loose change at a customer—in the over five years preceding the incident with Bird.  Because this single incident of attempted battery on a patron is not sufficiently similar to the completed battery, the dispatch logs do not rebut defendant's prima facie showing of no heightened foreseeability or otherwise raise a triable issue of fact regarding foreseeability.  Thus, any error by the trial court in excluding the dispatch call logs was harmless.  (Evid. Code, § 354; *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449 ["erroneous evidentiary ruling requires reversal only if 'there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of the error'"].)

The second of the two exhibits is a "CRIMECAST report" prepared by CAP Index, Inc., which set forth a numerical index score regarding the severity of crime in the area around the KFC location.  The trial court properly excluded the report (as well as Bird's expert's recitation of its contents in his declaration) because Bird laid no foundation for the report's admission and because Bird offered nothing but the report's own cursory explanation of what data was used to formulate the numerical index score, and no explanation at all regarding whether that data was reliable, whether security experts typically rely on that type of data, and what methodology was used to create that score.  (Evid. Code, § 403, subd. (a) [proponent of evidence has burden of establishing foundation for, and authenticity of, that evidence]; *People v. Goldsmith* (2014) 59 Cal.4th 258, 266 [writings must be authenticated]; Evid. Code, § 801, subd. (b) [expert witness's testimony must be "[b]ased on matter . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which [the expert's] testimony relates"].)  The

12

court also properly excluded her expert's opinion relying on the report. Under *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747 (*Sargon*), a trial court may decline to credit non-scientific evidence if its methodology has "'too great an analytical gap'" or is "speculative." (*Sargon*, at pp. 770-772.) Bird's expert did nothing to shore up the report's cursory explanation regarding the data and methodology used to calculate the numerical index score. Bird responds that defects in an expert's methodology are always questions for the jury, but she is wrong: *Sargon* itself preserves a role for trial courts in rejecting expert testimony, such as the testimony here, that they determine is too unreliable because it lacks basic methodological grounding and soundness.

What is more, even if we assume for purposes of argument that the CRIMECAST report should have been admitted, evidence of the "statistical crime rate of the surrounding area" like what Bird proffered in the report is not "of a type sufficient to" impose a duty on defendant to take those precautionary measures. (*Ann M.*, *supra*, 6 Cal.4th at p. 680; *Williams*, *supra*, 37 Cal.App.5th at pp. 668-669.)

Second, Bird argues that a security guard or interactive monitoring system would have prevented her assailant from hitting her. But this argument is relevant to *causation*; it has no bearing on whether defendant owed her a duty in the first place. (See *Lopez v. Baca* (2002) 98 Cal.App.4th 1008, 1020, fn. 11 [declining to reach causation argument where no duty found]; *Lucas v. George T.R. Murai Farms, Inc.* (1993) 15 Cal.App.4th 1578, 1591 [same].)

Third and lastly, Bird argues that defendant's employees failed to adequately document prior incidents at the KFC

location, which enabled defendant to remain "willfully ignorant" of the foreseeability of violence by patrons at the location. Even if we assume that defendant had internal records and, therefore, knowledge of the prior incidents described in the dispatch call logs, that fact would not alter our analysis that the heightened standard of foreseeability necessary to impose such burdensome precautionary measures still was absent as a matter of law. (See *Ann M.*, *supra*, 6 Cal.4th at pp. 679-680 [even assuming shopping center had notice of prior assaults and robberies on premises, those incidents "were not similar in nature to the" sexual assault suffered by the plaintiff].)

2.      *Sufficiency of responsive measures*

We also independently agree with the trial court that, even if there is a triable issue of material fact as to whether defendant's employees breached their duty to respond to the battery of Bird once it was imminent, the undisputed evidence shows that any breach of that duty did not cause Bird's injury as a matter of law. (*Morris*, *supra*, 36 Cal.4th at p. 278 [even if duty and breach established, factfinder still "required to consider whether the breach was a proximate cause of plaintiff's injuries"].) Causation requires proof that the restaurant's possible breach of a duty was a "substantial factor" in causing the patron's injuries. (*Saelzler*, *supra*, 25 Cal.4th at p. 772.) Here, the undisputed facts show it was not. It is undisputed that Bird's assailant entered the KFC location approximately 10 minutes before she approached Bird and, after a brief interaction, punched Bird in the jaw. It is also undisputed that law enforcement did not arrive until 42 minutes after the KFC manager called 911. Thus, it is undisputed that an earlier 911 call—even one made the moment the assailant walked into the

14

KFC—would not have resulted in law enforcement arriving in time to have prevented the battery on Bird. Thus, viewing the evidence in the light most favorable to Bird, the record contains insufficient evidence to find that the timing of the 911 call was a substantial factor in causing her injury. (*Castaneda*, *supra*, 41 Cal.4th at pp. 1222-1223; cf. *Lopez*, *supra*, 193 Cal.App.3d at p. 515 [to show "proximate, or legal, causation," plaintiff must show that business's "nonfeasance in some way contributed to their resulting injuries"].)

To the extent Bird's expert implied in his declaration that the KFC manager should have called 911 earlier, this conclusion ignores the undisputed facts. A patron suing for premises liability "must do more than simply criticize, through the speculative testimony of supposed security 'experts,' the extent and worth of the [business's] security measures, and instead must show the injury was actually caused by the failure to provide greater measures." (*Saelzler*, *supra*, 25 Cal.4th at p. 774; *id.* at p. 775 [where evidence is that altercation "could have occurred even in the absence of [business's] negligence, proof of causation cannot be based on mere speculation, conjecture[, or] inferences," including in an expert's opinion, "to reach a conclusion unsupported by any real evidence"]; *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 435.)

Bird resists our conclusion with four arguments. First, she argues that defendant breached its duty to protect because the employees at the KFC chose to record the altercation on a cell phone rather than heed Bird's requests to call the police. This point is irrelevant to the element of causation. Second, Bird argues that the assailant may have been dissuaded from

15

attacking her if a KFC employee had called the police *and told the assailant the police had been called.* But the assertion that the assailant would have been dissuaded is based on speculation rather than evidence; what is more, it is refuted by the undisputed evidence that the assailant was *not* dissuaded when Bird explicitly asked the KFC employees to call the police in her assailant's presence. Third, Bird argues that causation is always a question for the jury. Although causation is generally a question of fact for the jury, causation can be resolved as a matter of law on summary judgment where, as here, the undisputed facts indicate that reasonable minds could not differ on the absence of causation. (*Lopez, supra,* 193 Cal.App.3d at p. 513; *Barber, supra,* 80 Cal.App.5th at p. 246.) Fourth and lastly, Bird argues that when her expert said that the timing of the 911 call "may" have caused her injuries, he really meant the timing of the call "more likely than not" caused her injuries. We reject this argument because our task is to evaluate the evidence presented to the trial court (rather than the litigant's self-interested reworking of that evidence), and because the expert's opinion—as noted above—ignores the undisputed evidence.

## II.  Motion for Reconsideration

### A.  *Applicable law*

A trial court may reconsider a prior order if, within 10 days of that order, (1) a party raises "'new or different facts, circumstances, or law,'" and (2) the party "show[s] diligence with a satisfactory explanation for not presenting the new or different information earlier."[3] (Code Civ. Proc., § 1008, subd. (a); *Even*

---

[3]  Because Bird's arguments regarding the trial court's denial of her motion are unavailing on their merits, we do not separately analyze the untimeliness of her motion or whether she filed that

16

*Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 833, 842-843; *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 46, fn. 14 [showing of diligence required for motions brought under Code of Civil Procedure section 1008, subd. (a)].)  We review the denial of a motion for reconsideration for abuse of discretion.  (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1339.)

### B.    *Analysis*

The trial court did not abuse its discretion in denying Bird's motion for reconsideration because neither the "inadvertently omitted" deposition pages nor the amended expert declaration constitutes "new or different facts, circumstances, or law," which Bird could not have offered earlier with her opposition to the summary judgment motion.

The "inadvertently omitted" pages of the deposition of defendant's human resources director were available to Bird during the original round of briefing and the hearing, so they clearly are not "new or different facts" that would justify reconsideration of the court's summary judgment order.

---

motion prematurely (by seeking reconsideration of the unappealable *order* granting summary judgment rather than the judgment itself).  (Code Civ. Proc, § 1008, subds. (a) [10-day deadline to file motion] & (g) [order denying motion for reconsideration not separately appealable]; *In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468 ["plainly" untimely motion for reconsideration "could properly have been denied on that ground alone"]; *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761, fn. 7 [order granting summary judgment not appealable]; *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 680 (*Garcia*) [appeal from summary judgment must be taken from "judgment of dismissal"]; Code Civ. Proc., § 437c, subd. (m)(1).)

17

(*Hennigan v. White* (2011) 199 Cal.App.4th 395, 405-406; *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th 1452, 1460 ["evidence that should have been included in the initial . . . motion but was not" is "not a proper basis for reconsideration"]; *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 213 [evidence that was "new to the trial court" but "was available" to the parties and "easily obtainable" "does not constitute new or different facts within the meaning of [Code of Civil Procedure] section 1008"]; *Garcia*, *supra*, 58 Cal.App.4th at p. 690 [information previously available to a party does not satisfy the requirements of Code of Civil Procedure section 1008].)  Nor are the revisions to the expert's declaration, which were designed to provide Bird with a second bite at the apple by revising the exact part of the expert's declaration the trial court determined was pure speculation on the element of causation.  (*Shiffer v. CBS Corp.* (2015) 240 Cal.App.4th 246, 255-256 [expert declaration "purporting to reach new opinions based on [previously available] evidence was not, itself, new evidence"]; cf. *In re H.S.* (2010) 188 Cal.App.4th 103, 105 ["belated submission of an expert's opinion, formed based on evidence that was available" earlier, does not "constitute[] 'new evidence'"]; see also *Sargon*, *supra*, 55 Cal.4th at p. 770 ["'expert opinion based on speculation or conjecture is inadmissible'"].)

## DISPOSITION

The judgment for defendant and order denying Bird's motion for reconsideration are affirmed. Defendant is entitled to its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT

We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST